The State of Ohio, Appellee, v. Ashworth, Appellant.

[Cite as State v. Ashworth (1999), 85 Ohio St.3d 56.]

57

(No. 97–1497—Submitted October 28, 1998—Decided March 24, 1999.)

58

60

*Robert L. Becker*, Licking County Prosecuting Attorney, and *Kenneth W. Oswalt*, Assistant Prosecuting Attorney, for appellee.

*David H. Bodiker*, Ohio Public Defender, *J. Joseph Bodine, Jr.*, Assistant State Public Defender, and *Carol Wright*, for appellant.

ALICE ROBIE RESNICK, J.   In this appeal, Ashworth raises five propositions of law, all relating solely to his death sentence.   Finding none meritorious, we affirm his convictions and sentence.   In addition, we have reviewed the two

propositions of law raised by the state, independently reviewed the record, weighed the aggravating circumstance against the mitigating factors, and examined the proportionality and appropriateness of the death sentence in this case. Upon a complete review of the record, we affirm Ashworth's convictions and sentences.

## (I)
### Waiver of Mitigation

Ashworth argues in his first proposition that the Eighth Amendment to the United States Constitution prohibits a capital defendant from withholding all mitigating evidence from the factfinder. While acknowledging that the court has decided similar cases contrary to his position, Ashworth argues that his position here is not foreclosed for two reasons. First, Ashworth argues that no Ohio court has ever confronted this situation, where a defendant has pled guilty to a capital crime and prevented the presentation of mitigating evidence in order to secure a death sentence. Second, Ashworth argues that no Ohio case has "accurately" addressed the Ohio statutory requirement that a trial court *must* consider mitigation evidence, or the Eighth Amendment restriction on the state's authority to execute unless it has actually considered all relevant evidence that might militate against a sentence of death.

In fact, Ashworth's is the first case to reach this court in which a capital defendant has pled guilty and waived mitigation for the sole purpose of obtaining a sentence of death. Other defendants have refused to present mitigating evidence, or, as they saw it, to beg for their lives only after a jury had first found them guilty of a crime for which they had asserted their innocence. *State v. Zuern* (1987), 32 Ohio St.3d 56, 57–58, 512 N.E.2d 585, 587–588; *State v. Tyler* (1990), 50 Ohio St.3d 24, 27, 553 N.E.2d 576, 583. More recently, we found that a defendant who was competent could decide to waive all collateral proceedings. *State v. Berry* (1997), 80 Ohio St.3d 371, 686 N.E.2d 1097. *Berry*, while applicable, is somewhat distinguishable, since Berry had a full trial and sentencing proceeding in which he presented mitigating evidence. Here, Ashworth acknowledged his guilt, expressed remorse, and chose to receive the death penalty rather than spend the rest of his life, or the majority of it, in prison.

When Ohio's current death penalty statutes were drafted, the General Assembly made no provision for a situation such as Ashworth presents. While Crim.R. 11 addresses what must be done when a person charged with aggravated murder pleads guilty, there is no corollary procedure for the waiver of mitigation.[1] See

---

1. Crim.R. 11(C)(3) provides that in the interest of justice, a trial court may dismiss the capital specifications when a defendant chooses to enter a guilty plea.

*State v. Green* (1998), 81 Ohio St.3d 100, 103, 689 N.E.2d 556, 558. Here, the trial court crafted its own procedures. First, Ashworth was advised of his right to present evidence of mitigating factors. Then the court apprised him what could happen if he failed to present any mitigating evidence. Finally, the court appointed various experts to examine Ashworth and determine whether he was competent to waive mitigation under the standard enunciated in *State v. Berry* (1996), 74 Ohio St.3d 1504, 659 N.E.2d 796.[2] The experts found him competent, and the case proceeded.

In this case the procedures followed by the trial court ensured that Ashworth made a knowing and voluntary waiver of his presentation of mitigating evidence. These procedures provide a foundation for guidelines to assist trial courts in dealing with a situation such as the one presented here. We now hold that in a capital case, when a defendant wishes to waive the presentation of *all* mitigating evidence, a trial court must conduct an inquiry of the defendant on the record to determine whether the waiver is knowing and voluntary. The trial court must decide whether the defendant is competent and whether the defendant understands his or her rights both in the plea process and in the sentencing proceedings. See *Wallace v. State* (Okla.Crim.App.1995), 893 P.2d 504, 512–513; *Grasso v. State* (Okla.Crim.App.1993), 857 P.2d 802, 806. The trial court must inform the defendant of the right to present mitigating evidence and explain what mitigating evidence is. The court must then inquire of the defendant, and make a determination on the record, whether the defendant understands the importance of mitigating evidence, the use of such evidence to offset the aggravating circumstances, and the effect of failing to present that evidence. After being assured that the defendant understands these concepts, the court must inquire whether the defendant desires to waive the right to present mitigating evidence, and, finally, the court must make findings of fact as to the defendant's understanding and waiver of rights. See *Koon v. Dugger* (Fla.1993), 619 So.2d 246, 250.

We are not holding that a competency evaluation must be done in every case in which a defendant chooses to waive the presentation of mitigating evidence. See *Tyler*, 50 Ohio St.3d at 29, 553 N.E.2d at 585. A trial court should be cognizant of actions on the part of the defendant that would call into question the defendant's competence. However, absent a request by counsel, or any indicia of incompetence, a competency evaluation is not required.

In Ashworth's case, the procedures put together by the trial court essentially followed those set forth above. Since Ashworth was found competent, once he

---

2. Ashworth's competence and the application of the *Berry* standard are addressed in the third proposition of law, *infra*.

was advised of his right to present mitigating evidence and the consequences of his failure to do so, he was free to decide that he did not want mitigating evidence presented. The trial court was not obligated to do any more.

However, counsel for Ashworth argue that the trial court should have gone further by granting defense counsel's requests that an independent counsel be appointed to investigate and present mitigating evidence for the court's consideration. Counsel for Ashworth argue that the failure to present mitigating evidence "undermines this Court's statutorily mandated duty to conduct a complete review * * * [and] creates a serious dilemma when a defendant changes his mind about desiring the death penalty—as appellant Ashworth has done in this case." As to the latter contention, nothing indicates that Ashworth has changed his mind concerning the presentation of mitigating evidence as counsel for Ashworth now allege.[3] Having found that the court followed proper procedures, we hold that Ashworth was competent to waive the presentation of mitigation and that he cannot now rescind that waiver and argue that he is entitled to a new penalty phase because he changed his mind.

Since Ashworth was competent to waive the presentation of mitigation, the only question remaining is whether, in spite of his waiver, there is some constitutional or statutory requirement that compels the presentation of mitigating evidence. In our view, a rule requiring the presentation of mitigating evidence would be impossible to enforce. Even if the court attempted to require an attorney to present mitigating evidence, it cannot force an unwilling defendant to provide that evidence to his attorney. In *Gray v. Lucas* (C.A.5, 1982), 677 F.2d 1086, the defendant steadfastly maintained that he did not want anyone to testify on his behalf and refused to identify any witnesses for the sentencing phase. The court said that the refusal did not negate the attorney's duty to investigate, but added that "the scope of that duty was limited by [the defendant's] refusal." *Id.* at 1094. See, also, *Hamblen v. State* (Fla.1988), 527 So.2d 800, 804 ("There is no power that could have compelled [the defendant] to cooperate and divulge such information.").

---

3. At the time of Ashworth's plea and sentencing hearing, Ashworth also indicated that he wanted to waive all challenges to his conviction and sentence. However, appellate counsel were appointed, and a notice of appeal was filed in this court. After the state sought to dismiss the appeal, appellate counsel filed an affidavit signed by Ashworth, indicating that he wanted to pursue challenges to his conviction and sentence. This court denied the state's motion to dismiss. *State v. Ashworth* (1997), 80 Ohio St.3d 1412, 684 N.E.2d 705. While appellate counsel asserted at oral argument that Ashworth had changed his mind concerning the presentation of mitigating evidence, Ashworth's affidavit asserts only that he "intend[s] to pursue all available constitutional, statutory and procedural rights to challenge [his] conviction and death sentence including going forward with [his] appeal." The affidavit does not make any assertions concerning a change of heart on the presentation of mitigating evidence at the time of trial.

Society does have an interest in executing only those who meet the statutory requirements and in not allowing the death penalty statute to be used as a means of state-assisted suicide. However, " '[s]ociety's interest in the proper administration of justice is preserved by giving a defendant the right freely to present evidence in mitigation, by requiring the sentencing body to find aggravating factors before imposing the death penalty, and by requiring that a sentence of death be reviewed by this court. These practices are to assure that the death penalty will not be imposed arbitrarily.' " *Hamblen*, 527 So.2d at 804, quoting *People v. Silagy* (1984), 101 Ill.2d 147, 181, 77 Ill.Dec. 792, 461 N.E.2d 415, 432.

Admittedly, the Eighth Amendment does impose a high requirement of reliability on the determination that death is the appropriate penalty in a particular case. See, *e.g., Johnson v. Mississippi* (1988), 486 U.S. 578, 584, 108 S.Ct. 1981, 1986, 100 L.Ed.2d 575, 584; *Mills v. Maryland* (1988), 486 U.S. 367, 383–384, 108 S.Ct. 1860, 1870, 100 L.Ed.2d 384, 399. However, the United States Supreme Court has never suggested that this requires or justifies forcing an unwilling defendant to accept representation or to present an affirmative penalty defense in a capital case.

"Indeed, the lack of any legal or practical means to force a * * * defendant to present mitigating evidence, or indeed any defense at all, compels the conclusion that the death-verdict-reliability requirement cannot mean that a death verdict is unsound merely because the defendant did not present potentially mitigating evidence. Rather, the required reliability is attained when the prosecution has discharged its burden of proof at the trial and penalty phases pursuant to the rules of evidence and within the guidelines of a constitutional death penalty statute * * *. A judgment of death entered in conformity with these rigorous standards does not violate the Eighth Amendment reliability requirements." *People v. Bloom* (1989), 48 Cal.3d 1194, 1228, 259 Cal.Rptr. 669, 690, 774 P.2d 698, 719; *People v. Sanders* (1990), 51 Cal.3d 471, 525–526, 273 Cal.Rptr. 537, 569–570, 797 P.2d 561, 593–594.

Ashworth argues that when a defendant chooses to give up an adversarial position and seek the death penalty himself, all safeguards are lost. However, his claim ignores the existing safeguards to ensure the appropriateness of the death sentence. First, the trial court cannot impose sentence based on a guilty plea until it has made the specific findings required by R.C. 2945.06 and Crim.R. 11(C)(3) that a defendant is eligible for the death penalty. Second, the same considerations go into the sentencing decision even when a defendant does not vigorously oppose it. R.C. 2929.03(F). Finally, as the state concedes, a defendant cannot waive this court's review of his death sentence, though he can waive review of his conviction. R.C. 2929.05(A).

Therefore, Ashworth's decision not to present mitigating evidence did not deprive the state of its interest in seeing that his sentence was imposed in a constitutionally acceptable manner. The prosecution was required to present evidence of the aggravating circumstances. The trial court was required to determine whether all the elements of aggravated murder and the death penalty specifications were proved beyond a reasonable doubt before entering a guilty verdict. Further, before it could impose the death sentence the court was required to afford Ashworth the opportunity to present mitigating evidence, which it did, and then to weigh the aggravating circumstances against the mitigating factors, if any. This court is required to review the evidence in this case to determine whether the sentence was appropriate, proportionate, and not imposed in an arbitrary or unreliable manner.

Ohio's statutory framework places the decision about whether to offer evidence of mitigation squarely in the hands of the defendant. R.C. 2929.03(D)(1) ("The defendant shall have the burden of going forward with the evidence of any factors in mitigation * * *. "). This has been characterized as providing a defendant with "an opportunity to introduce the mitigating evidence available to him, and requiring the sentencer to consider it." *Tyler*, 50 Ohio St.3d at 28, 553 N.E.2d at 584. If the statute gives the defendant the opportunity to offer such additional evidence but does not expressly require him to do so, the defendant must also have the right not to do so.

In Ashworth's final argument on this issue, he alleges that more is required than just "the opportunity" to present mitigating evidence. However, in *Tyler*, we held that the constitutional requirement that mitigation be considered is rooted in the desire to protect the defendant's interest in individualized sentencing. *Tyler* at 28, 553 N.E.2d at 584. That interest is protected by giving the defendant an opportunity to introduce available mitigating evidence and requiring the sentencer to consider it. "But where [the defendant] chooses to forgo that opportunity, no societal interest counterbalances his right to control his own defense." *Id.* The prerequisite to consideration of mitigating evidence by the sentencer is the proffer of evidence by the defendant.

The United States Supreme Court has not directly ruled on the issue presented here. However, in *Blystone v. Pennsylvania* (1990), 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255, the court did find that a statute that requires the death penalty if there are no mitigating circumstances is permissible where death is not automatically imposed upon conviction for certain types of murder. "[Death] is only imposed after a determination that the aggravating circumstances outweigh the mitigating circumstances present in the particular crime committed by the particular defendant, or that there are no such mitigating circumstances. *This is sufficient* under *Lockett* [*v. Ohio* (1978), 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d

973] and *Penry* [*v. Lynaugh* (1989), 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256]." (Emphasis added.) *Blystone,* 494 U.S. at 305, 110 S.Ct. at 1082–1083, 108 L.Ed.2d at 263.

Finally, in spite of Ashworth's efforts to preclude mitigating evidence, the record in this case is not devoid of evidence that could be considered mitigating. The competency evaluations conducted in this case and the reports admitted as joint exhibits provide us with evidence that we have examined for mitigation purposes. And, as set forth below in the independent review, other mitigating factors are present in this case. Thus, the record here did not inhibit this court from its statutorily mandated duty of conducting an independent review. This proposition of law is overruled.

## (II)

### Predisposed Trial Judge

Ashworth argues in his second proposition that the presiding judge was predisposed to impose the death sentence upon him. Ashworth relies on passages in the transcript where the trial judge, in the course of questioning him concerning his waiver of mitigation, indicated that if Ashworth presented no mitigating evidence, the only sentence that could be imposed is death. Ashworth also points to a judgment entry in which the judge spoke of the death penalty as already having been imposed, even though that penalty had not yet been decided upon. Ashworth argues that this indicates that the trial judge was biased and prejudiced against him.

We disagree. In our view, the record does not indicate that the presiding judge was prejudiced or biased against Ashworth. No affidavit of disqualification was filed by Ashworth during the trial proceedings. What the record indicates is a *possibility* that the judge mistakenly believed that if no mitigating evidence was presented in a penalty phase hearing, there would be no choice but to enter a death sentence.

If the judge did believe that, he was clearly mistaken. First, Crim.R. 11(C)(3) allows the trial court to dismiss the capital specification in the interest of justice when a guilty plea is entered. Here, the court could have taken that action and then the death sentence would not have been imposed. Second, mitigating factors could exist in the nature and circumstances of the case. For example, if the trial court believed Ashworth's allegation that Baker had made sexual advances to him and would not stop those advances when rebuffed, Baker's aggression could be a factor to consider in mitigation. Also, mitigating features about Ashworth's history, character, and background or "any other factors" in R.C. 2929.04(B)(7) might have come to light during the state's case, *e.g.,* Ashworth's remorse, or his belated effort to assist by calling 911. Finally, Ash-

worth's guilty plea would be a strong mitigating factor. The death sentence, while likely if no additional mitigating evidence is presented by the defendant, is certainly not mandatory.

However, it is unclear that the trial judge actually thought that the death penalty was the only option. The record does reveal some instances in which the judge correctly states that there could be an alternative sentence. For example, the trial court informed Ashworth that there might be some mitigation in the facts of the case presented by the state, which indicates an awareness that there could be mitigating factors present, in spite of Ashworth's decision. Further, in closing argument, the state argued to the court that the court would have to engage in a weighing process and would have to look at the facts presented and determine whether mitigating evidence is present.

Given the nature of the proceedings in this case, the trial judge could have simply been apprising Ashworth that the likely result of waiving the presentation of mitigating evidence would be the death sentence. We have historically indulged "in the usual presumption that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." *State v. Post* (1987), 32 Ohio St.3d 380, 384, 513 N.E.2d 754, 759. Here, in spite of the fact that there may be conflicting inferences in the record, any error by the trial court in consideration of the sentence in this case was harmless, since there was little mitigating evidence present in the facts of the case. See *State v. Cook* (1992), 65 Ohio St.3d 516, 528–529, 605 N.E.2d 70, 83–84. Finally, our independent review will cure any errors in the trial court's weighing of the aggravating circumstance and mitigating factors. *State v. Lott* (1990), 51 Ohio St.3d 160, 173, 555 N.E.2d 293, 306. This proposition of law is overruled.

### (III)
### Competency to Waive Proceedings

In his third proposition of law, Ashworth argues that even assuming that a capital defendant can waive the presentation of mitigating evidence, the competency standard adopted in *State v. Berry* (1997), 80 Ohio St.3d 371, 686 N.E.2d 1097, and applied by the trial court, was an incorrect standard.

Ashworth's counsel requested that Ashworth be examined for competency to waive the presentation of mitigating evidence and appeals. The trial court granted the request.[4] After a hearing on the motion for a competency evaluation, both parties agreed on the appointment of Dr. Kristen E. Haskins, a clinical

---

4. The trial court determined, after both parties stipulated to the competency report by Dr. Khelaf, that Ashworth was competent to stand trial. Ashworth does not challenge that finding on appeal.

psychologist, to perform the evaluation. At defense counsel's request, the standard for competency adopted in *State v. Berry* (1996), 74 Ohio St.3d 1504, 659 N.E.2d 796, was utilized. Pursuant to an April 17, 1997 entry, Dr. Haskins was asked to use the following standard to determine competence: "A capital defendant is mentally competent to abandon any and all challenges to his death sentence, including appeals, state post-conviction collateral review, and federal habeas corpus, if he has the mental capacity to understand the choice between life and death and to make a knowing and intelligent decision not to pursue further remedies. The defendant must fully comprehend the ramifications of his decision, and must possess the 'ability to reason logically,' *i.e.*, to choose 'means which relate logically to his ends.' " (Citations omitted.)

This was the standard we adopted in *Berry*. Berry chose to waive postconviction and federal habeas review of his case. Ashworth now argues that the standard he requested is an incorrect standard, and, therefore, the determination that he was competent is invalid and his case must be remanded for a new evaluation.

Ashworth asserts that the *Berry* standard does not apply to the entering of a guilty plea. Yet that was not the purpose of Dr. Haskins's examination. Dr. Haskins was asked to examine Ashworth to determine his competency to waive further legal proceedings, including the presentation of mitigating evidence. Further, the trial court, after a hearing, separately determined that Ashworth's guilty plea was knowing, intelligent, and voluntary.

The *Berry* standard was based on the United States Supreme Court's decision in *Rees v. Peyton* (1966), 384 U.S. 312, 314, 86 S.Ct. 1505, 1506, 16 L.Ed.2d 583, 584–585. In *Rees*, the court found that a person may elect to forgo further proceedings if he has the "capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation [or] whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises."

Ashworth argues that the *Berry* standard is "more burdensome" than the *Rees* standard. Not so. As we held in *Berry*, the *Berry* standard is actually a more specific statement of the general language used in *Rees*.[5] While the *Berry* standard was not formulated to deal with precisely this situation, the inquiry into Ashworth's competence is satisfied by its application. A modification of the

---

5. In an attempt to reargue the *Berry* standard in this case, Ashworth relies on the federal district court's review of the *Berry* standard in Berry's case. *Franklin v. Francis* (S.D.Ohio 1998), 997 F.Supp. 916. Ashworth's arguments were recently rejected in the Sixth Circuit's reversal of the district court decision in *Berry*. See *Franklin v. Francis* (C.A.6, 1998), 144 F.3d 429. The circuit court specifically stated, "The Ohio Supreme Court properly followed the test of competence from *Rees*." *Id.* at 433.

*Berry* standard meets the situation presented by the Ashworth facts. If a defendant chooses to waive the presentation of all mitigating evidence, as Ashworth did here, and the issue of competency is raised, the standard used to determine competence is as follows: A defendant is mentally competent to forgo the presentation of mitigating evidence in the penalty phase of a capital case if he has the mental capacity to understand the choice between life and death and to make a knowing and intelligent decision not to pursue the presentation of evidence. The defendant must fully comprehend the ramifications of his decision, and must possess the ability to reason logically, *i.e.,* to choose means that relate logically to his ends.

Dr. Haskins correctly applied the test set forth in *Berry* in her examination of Ashworth. Ashworth was not suffering from any mental disease, disorder, or deficiency that would affect his decisionmaking process. Dr. Haskins specifically found, "In Conclusion, based upon the findings of this examination, it is my opinion with reasonable psychological certainty that Herman Dale Ashworth, the defendant in this case, has the mental capacity to understand the choice between life and death and to make a knowing and intelligent decision not to pursue further remedies, and that he fully comprehends the ramifications of his decision and possesses the ability to reason logically [*i.e.*], to choose means which relate logically to his ends."

Based on Dr. Haskins's findings, as well as her testimony at the competency hearing (including defense cross-examination), the three-judge panel found Ashworth mentally competent to waive the presentation of mitigating evidence and competent to abandon any and all challenges to his death sentence. Nothing in the record of this case indicates that the panel's findings were erroneous. Ashworth was competent to waive the presentation of mitigating evidence. Therefore, the third proposition of law is overruled.

*(IV)*

*Scope of Appellate Review*

The state also raises an issue for the court's review in its merit brief. In its sixth proposition of law, the state argues that because Ashworth made a knowing, voluntary, intelligent waiver of his right to appeal, he can never change his mind and pursue that appeal. The state argues that the issues raised in Ashworth's merit brief are not properly before this court and that this court is limited to a review of the validity of the waiver and of the sentence.

The state asserts that there are no cases discussing the "unilateral withdraw[al] of a waiver" and asks this court to apply the standard set forth in Crim.R. 32.1 for the withdrawal of a guilty plea to a situation such as this one, in which a person waives his right to appeal and then changes his mind. In the

state's view, Ashworth's failure to establish "manifest injustice" should preclude his appeal to this court.

The state's reliance on the guilty plea analogy is misplaced. Crim.R. 32.1 becomes applicable when the event, the entry of the guilty plea, has already taken place. This is quite different from the appeal waiver situation. In this case, while Ashworth waived his right to appeal, his actual appellate rights had not yet ripened. Ashworth's waiver of appellate rights would not become effective until the time for filing his appeal had passed. Ashworth is not trying to reinstate his appellate rights after the time for filing an appeal had passed. Instead, he filed a timely notice of appeal and corroborated that affirmative step with an affidavit indicating his desire to appeal.

The state argues that Ashworth's waiver is comparable to a plea bargain or stipulation. It is not. Ashworth gained nothing from the state by waiving his right to appeal, nor was there an agreement between the parties. Therefore, Ashworth remained free to change his mind and pursue his appeal if he timely perfected the appeal, which he did. There was no gamesmanship involved. By changing his mind, Ashworth gained nothing more than his right to appeal, and the state is in no worse position than prior to Ashworth's waiver.

This situation presented here is more like a waiver of a jury trial. R.C. 2945.05 provides for the waiver of a trial by jury, but also adds that "[s]uch waiver may be withdrawn by the defendant at any time before the commencement of the trial." Several courts of appeals have held that the refusal to allow a timely withdrawal of a jury waiver is error. See *State v. Grimsley* (1982), 3 Ohio App.3d 265, 266–267, 3 OBR 308, 310–311, 444 N.E.2d 1071, 1073–1074; *Marysville v. Foreman* (1992), 78 Ohio App.3d 118, 603 N.E.2d 1155.

The state concludes that this court is limited to reviewing the validity of the waivers and of the sentence. This argument presupposes a completed waiver of appellate rights. Since that is not the situation presented to this court, any issue concerning the scope of review when a defendant waives appeal in a capital case is not presented by the facts of this case. Therefore, the state's proposition of law has no merit and is hereby overruled.

*(V)*

*Violation of International Law*

Ashworth asserts that Ohio's imposition of a death penalty violates United States treaties and hence the Constitution's Supremacy Clause. That claim is overruled based upon our decision in *State v. Phillips* (1995), 74 Ohio St.3d 72, 103–104, 656 N.E.2d 643, 671.

*(VI)*

*General Constitutional Challenge*

Ashworth argues that Ohio's capital sentencing scheme deprives defendants of due process and equal protection and results in cruel and unusual punishment in violation of the United States Constitution. We have rejected these claims. See, *e.g., State v. Jenkins* (1984), 15 Ohio St.3d 164, 168–169, 15 OBR 311, 314–315, 473 N.E.2d 264, 272–273; *State v. Sowell* (1988), 39 Ohio St.3d 322, 335–336, 530 N.E.2d 1294, 1308–1309; *State v. Steffen* (1987), 31 Ohio St.3d 111, 125, 31 OBR 273, 284–285, 509 N.E.2d 383, 395–396; *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768, paragraph six of the syllabus; *State v. Lewis* (1993), 67 Ohio St.3d 200, 206, 616 N.E.2d 921, 926; *State v. Buell* (1986), 22 Ohio St.3d 124, 137, 22 OBR 203, 214, 489 N.E.2d 795, 807; *State v. Coleman* (1989), 45 Ohio St.3d 298, 308–309, 544 N.E.2d 622, 633–634; *State v. Smith* (1997), 80 Ohio St.3d 89, 684 N.E.2d 668. This proposition of law is overruled.

*(VII)*

*Independent Sentence Review*

In the state's seventh proposition of law, it argues that the death sentence in this case is appropriate. The state's arguments will be taken into consideration in our independent review.

The trial court merged the two counts of aggravated murder in this case and the two aggravating circumstances. The factual basis presented by the state and agreed to by Ashworth supports the trial court's finding of guilt beyond a reasonable doubt of all charges and the single remaining death penalty specification.

Nothing in the nature and circumstances of this case is mitigating. Ashworth literally beat Baker to death. After his first beating, Baker lay for four to five hours before Ashworth came back to finish him off. Even then, according to the coroner, Baker survived for another ten to twenty minutes.

The trial court found no mitigating factors. However, we find that the record in this case does provide us with information that could be considered for possible mitigation.

If Ashworth's allegations about Baker's sexual advances are to be believed, then, under R.C. 2929.04(B)(1), the victim arguably induced or facilitated the offense. However, we do not find that factor proved by a preponderance of the evidence. The factors set forth in R.C. 2929.04(B)(2) through (6) are also not present in the record of this case.

A great deal of psychological testing was performed on Ashworth. The results indicated that Ashworth possesses a full scale IQ of ninety-one. As Dr. Haskins

concluded in her report, "Overall, the results of psychological testing indicate that Mr. Ashworth is a man of average intellectual functioning, who does not evidence serious neuropsychological dysfunction and who has longstanding difficulties which are characterological in nature. There are no signs of serious mental illness such as a psychosis, major depression, severe anxiety or organic mental disorder."

The state's evidence also revealed that Ashworth did make a 911 call at 4:13 a.m., indicating that there was a person needing help and the location of the victim. There was evidence that Baker's body had been found at 3:45 a.m. and that there was a police scanner at Sillin's home, where Ashworth was living. There was no evidence that the scanner was on that night or that Ashworth was aware that Baker had been found at the time he made the 911 call. We give this factor little weight.

However, Ashworth's voluntary guilty plea deserves some weight, since guilty pleas are traditionally accorded substantial weight in imposing a sentence. Crim.R. 11(C)(3) even allows the trial court to dismiss a death penalty specification, in the interest of justice, when the defendant enters a guilty plea, although the trial court did not do so here. Further, Ashworth's willingness to step forward and take responsibility for his actions, without any offer of leniency by the state, indicates a person who is remorseful for the crimes he has committed. We have previously considered remorse as a mitigating factor. *State v. Mitts* (1998), 81 Ohio St.3d 223, 236–237, 690 N.E.2d 522, 533.

The record also indicates that Ashworth had an alcohol abuse problem and that he had a tendency to become violent when he drank. We accord that factor minimal weight under R.C. 2929.04(B)(7). See *State v. Sowell,* 39 Ohio St.3d at 336–337, 530 N.E.2d at 1309–1310.

Upon weighing the aggravating circumstance against the factors in mitigation, we find that the aggravating circumstance outweighs the mitigating factors, beyond a reasonable doubt.

As part of the appropriateness determination, we must consider whether the death sentence is disproportionate. In conducting the proportionality review required by R.C. 2929.05(A), we have compared Ashworth's case with other decisions of this court in which an aggravated robbery was present.

In *State v. Burke* (1995), 73 Ohio St.3d 399, 653 N.E.2d 242, the defendant was found guilty of the aggravated robbery and escaping detection specifications for the stabbing murder and robbery of an elderly man. Burke presented mitigating evidence that he was borderline mentally retarded and suffered from a borderline personality disorder. We upheld the sentence of death.

In *State v. Benge* (1996), 75 Ohio St.3d 136, 661 N.E.2d 1019, the defendant was convicted of both aggravated robbery and escaping detection specifications, which were merged by the trial court. The victim, Benge's girlfriend, died from numerous blows to the head and multiple skull fractures. She was found in a river, having been weighted down with a piece of concrete. The victim's ATM card was found in Benge's possession. Benge presented mitigating evidence that included a lack of a significant criminal history, and family support, work history, drug abuse, and remorse. There, we also affirmed the death sentence.

In comparison to *Burke* and *Benge,* Ashworth's death sentence is not disproportionate. In our view, the death sentence imposed on Ashworth is appropriate.

For all of the foregoing reasons, the judgment of the court of common pleas is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., concurs separately.

PFEIFER, J., dissents.

---

MOYER, C.J., concurring. The majority opinion sets forth the procedure that should be followed in a case in which a capital defendant chooses to waive the presentation of mitigating evidence. I concur in the judgment rendered by the majority but write separately to express my concern for ensuring that this court has the information necessary to fulfill its statutory obligation in a capital case.

In this case, a competency evaluation was conducted prior to the trial, providing this court with some useful evidence in the record for the weighing process required by R.C. 2929.05. However, the majority decision leaves open the possibility that, in the future, we may be faced with a record that is either void of any mitigating evidence for this court to review or one that creates doubt as to the defendant's competency to make an informed decision to waive the right to present mitigating evidence.

Relying on a past decision in *State v. Tyler* (1990), 50 Ohio St.3d 24, 29, 553 N.E.2d 576, 585, the majority refuses to hold that a competency evaluation must be performed in every case in which a defendant chooses to waive the presentation of mitigating evidence. I concur in the judgment in this case because a competency evaluation appears in the record. I am writing separately to express my opinion that a competency evaluation should be required in every case in which a defendant in a death penalty case instructs his or her attorney not to offer evidence in the mitigation phase of the trial.

Since *Tyler* was decided, we have again addressed the issue of whether a waiver of legal proceedings in a death penalty case calls into question the competency of the defendant. In *State v. Berry* (1997), 80 Ohio St.3d 371, 375, 686 N.E.2d 1097, 1101, we agreed that it is " 'very probable * * * that in every case where a death-row inmate elects to abandon further legal proceedings, there will be a possibility that the decision is the product of a mental disease, disorder, or defect.' " (Quoting *Smith v. Armontrout* [C.A.8, 1987], 812 F.2d 1050, 1057.) Waiving an opportunity to offer evidence that would mitigate the finding of guilt, when there is still a chance that a death penalty may be avoided, certainly cannot create a less compelling issue of competency than a decision to waive appeals after a well-fought battle to prevent imposition of the death sentence in the first place.

Absent a competency evaluation, neither the trial court nor this court on review will have sufficient evidence upon which it may base a competency determination. A colloquy among the judge, the defendant, and counsel, which is required by the majority opinion, is insufficient to determine competency under the applicable standard, because the standard goes beyond the general requirement of a knowing and intelligent waiver. Further, an evaluation would provide at least some evidence on the record that this court may use to fulfill its statutory duty under R.C. 2929.05 to independently weigh mitigating factors and aggravating circumstances.

As noted by the majority, we have previously articulated a standard of competency that should be used when a capital defendant chooses to abandon any and all challenges to a death sentence, and I agree with the majority that it should be adopted as the applicable standard for determining competency to waive the presentation of mitigating evidence. A court must determine that the defendant has the mental capacity to understand the choice between life and death, to make a knowing and intelligent decision not to pursue the presentation of evidence, and to fully comprehend the ramifications of that decision, and possesses the ability to reason logically.

We should not assume that a judge can effectively make such a determination by conducting a mere colloquy in open court. The determination should be made by a licensed professional, trained in psychological analysis. Such a requirement would not only assure that a defendant does not inappropriately waive a statutory right; it would also prevent the circumstance in which a defendant who waived the opportunity to present mitigating evidence at trial later changes his or her mind on appeal, claiming to have been incompetent when the decision was made. To the extent that our decision in *State v. Tyler* is inconsistent with the suggested rule, I believe it should be overruled. For the foregoing reasons, I concur separately in the decision of the majority.

PFEIFER, J., dissenting. I join Chief Justice Moyer's concurrence and share his concerns regarding the waiver of presentation of mitigating evidence in death penalty cases. I separately dissent because I believe that a sentence of death is inappropriate in this case.

As I stated in my dissent in *State v. Simko* (1994), 71 Ohio St.3d 483, 501–502, 644 N.E.2d 345, 359–360, the General Assembly has granted this court an imprecise mandate regarding our proportionality review in death penalty cases. I view our role pursuant to R.C. 2929.05 as determining "whether the penalty of death is appropriate in a particular case, given the penalty's role in our overall system of justice." *Simko* at 502, 644 N.E.2d at 360. The death penalty should be reserved for the most severe of cases. I do not view this case as one of those.

Here, the defendant showed immediate and continued remorse for his actions, called for help for his victim, and pleaded guilty to the crime. His call to 911 indicates that he regretted endangering his victim's life and wished to reverse what had happened. His confession to the crime, guilty plea, and failure to allow mitigation evidence demonstrate his understanding of the gravity of his acts and his willingness to accept a severe punishment. I view life in prison, a prospect that Ashworth once so dreaded that he sought the death penalty, as more appropriate in this instance.