OPINION
Appellant Herman Dale Ashworth appeals a judgment of the Licking County Common Pleas dismissing his petition for post-conviction relief without an evidentiary hearing.
 ASSIGNMENTS OF ERROR
ASSIGNMENT OF ERROR NO. I
THE TRIAL COURT ERRED IN ISSUING INSUFFICIENT FINDINGS OF FACT AND CONCLUSIONS OF LAW IN REGARD TO APPELLANT'S PETITION FOR POST-CONVICTION RELIEF.
ASSIGNMENT OF ERROR NO. II
THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S SUMMARY JUDGMENT MOTION.
ASSIGNMENT OF ERROR NO. III
THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT MORELAND [SIC] AN EVIDENTIARY HEARING ON HIS PETITION FOR POST-CONVICTION RELIEF, THUS VIOLATING HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.
ASSIGNMENT OF ERROR NO. IV
THE TRIAL COURT ERRED IN ITS APPLICATION OF THE DOCTRINE OF RES JUDICATA TO APPELLANT'S CLAIMS FOR RELIEF, THUS VIOLATING HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH, ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 5, 9, 10, 16 AND 20 OF THE OHIO CONSTITUTION.
ASSIGNMENT OF ERROR NO. V
OHIO'S POST-CONVICTION PROCESS IS NOT AN ADEQUATE AND CORRECTIVE PROCESS.
After living in DeQuincy, Louisiana, appellant moved to Newark, Ohio in April of 1996. On September 10, 1996, appellant went to the Wagon Wheel Bar and began drinking. While in the bar, appellant began talking to Daniel Baker. People in the bar, including Baker, were buying appellant drinks. Appellant told the owner of the bar he thought Baker was gay, and he was going to get rid of him. The bar owner did not observe anything that would indicate that Baker was gay, nor did he see Baker make any homosexual advances toward appellant. The bar owner did see appellant and Baker leave together. Appellant later met his girlfriend outside the Wagon Wheel Bar and the TNT Bar. As they were talking, appellant's girlfriend grabbed his right hand. He fell to his knees in pain, and told the girlfriend that he hurt his hand in a fight. Appellant then took his girlfriend behind the Legend Bar, to the Salvation Army loading dock. Appellant's girlfriend observed a man lying on his belly, but did not see any blood. She heard what sounded like snoring coming from him. She also noticed that appellant had blood on one of his shoes. Appellant and his girlfriend proceeded to the TNT Bar, where appellant purchased a bucket of beer. Appellant told his girlfriend that he thought he should go back and finish the guy off, because he did not want to be recognized. When his girlfriend begged him not to go, appellant told her he was going back to the Wagon Wheel Bar. Appellant's girlfriend stayed at the TNT until the last call, around 2:15 a.m. She then went to the Wagon Wheel, but appellant was not there. When she got near the Legend Bar, she heard a noise that sounded like something hitting metal. She walked toward the noise, which was coming from the Salvation Army loading dock. She saw the same man she had seen earlier, lying on his back, with his head against the garage door. There was a lot of blood at the scene. She observed papers and articles thrown about. Appellant's girlfriend returned to the Wagon Wheel where she grabbed appellant, and said, "You robbed him". Appellant did not reply. He had dark spots on his pants. Earlier that evening, appellant told a friend that he had been in a fight, and "kicked the shit out of this guy". Appellant told his friend that he kicked him until he could not kick anymore. Around 3:45 a.m. on September 11, Daniel Baker's body was found on the Salvation Army loading dock. When the police arrived, Baker was dead. Blood had seeped underneath the garage door, and items belonging to Baker were strewn about. Bloody footprints surrounded the area, and were evident on Baker's chest. While police were investigating the crime scene, a 911 call came into the police station. The caller said that he had beaten a man badly and left him on the loading dock of the Salvation Army. The call was traced to a public telephone located less than a mile from appellant's home. After police located appellant, he agreed to come to the station for questioning. He agreed to make a taped statement after being informed of his Miranda rights. Appellant told police that Baker "reached down and grabbed me on my butt." Appellant claimed that he told him to stop, claiming he was "not that way", but Baker would not stop. Appellant said that he kept trying to move away from Baker, and they ended up on the loading dock. Appellant told police that Baker kept moving toward him and tried grabbing him. Appellant then began to hit him with his fist. Appellant stated that Baker did not fight back, but kept coming at him. Appellant said that he eventually picked up a board and struck Baker with it. After Baker fell down, appellant kicked him. Appellant took the wallet out of Baker's pants, claiming he took about $42 in cash. Appellant's pants and shoes were confiscated. The shoes had blood on them. The pants had blood on them, and in the front pants pocket, police found Baker's driver's license and credit cards. The soles of appellant's shoes matched the bloody footprints at the scene, and on the victim's shirt. Appellant was charged with two counts of aggravated murder, and a separate count of aggravated robbery. A specification that the murder was committed during the course of an aggravated robbery was attached to each murder count. In addition, a specification that the murder was committed to escape detection for the aggravated robbery was attached to the second murder. Appellant entered a plea of guilty, and waived the presentation of mitigating evidence. A three-judge panel found sufficient basis to find him guilty of aggravated murder, all capital specifications, and aggravated robbery, and sentenced him to death. Appellant appealed the judgment of conviction and sentence to the Ohio Supreme Court. The court found that the trial court did not err in allowing appellant to waive all mitigating evidence, based on a finding that he was competent to do so. The court concluded that in a capital case, when a defendant wishes to waive the presentation of all mitigating evidence, the trial court must conduct an inquiry of the defendant on the record to determine whether the waiver is knowingly and voluntary. State v. Ashworth (1999), 85 Ohio St.3d 56, syllabus one. A defendant is mentally competent to forego the presentation of mitigating evidence if he has the mental capacity to understand the choice between life and death, and to make a knowing and intelligent decision not to pursue the presentation of evidence. Id. at syllabus two. The defendant must comprehend the ramifications of his decision, and must possess the ability to reason logically. Id. The Ohio Supreme Court concluded that the procedure followed by the trial court in the instant case was adequate to allow appellant to waive his right to present mitigating evidence. The court further held that the court need not go farther and appoint independent counsel to investigate and present mitigating evidence over appellant's wishes. After conducting an independent sentence review, the court affirmed the conviction and sentence. Appellant filed a petition for post-conviction relief, arguing primarily that counsel was ineffective for failing to present mitigating evidence. The court dismissed the petition without an evidentiary hearing.
 I
Appellant first argues that the court's findings of fact and conclusions of law are insufficient. The trial court's findings are not filed in the traditional manner of findings of fact and conclusions of law. However, a trial court need not discuss every issue raised by appellant, or engage in an elaborate and lengthy discussion in its findings of fact and conclusions of law. State v. Calhoun (1999), 86 Ohio St.3d 279, 291. The findings need only be sufficiently comprehensive and pertinent to the issues to form a basis upon which a reviewing court can determine that the evidence supports the conclusions reached by the court. Id. at 291-292. The court's findings of fact are sufficient to apprise appellant of the grounds for the judgment, and enable this court to properly determine the basis on which the court entered its judgment. The court ultimately concluded that virtually all claims raised by appellant were barred by res judicata, as they either were raised on direct appeal, or could have been raised on direct appeal. Such findings do not require extensive discussion. The court failed to specifically rule upon appellant's eighth claim for relief. However, the failure of the court to specifically address this claim for relief was harmless, as the eighth claim for relief raised essentially the same claims addressed by the court in its opinion concerning ineffective assistance of counsel and the appropriateness of the court allowing appellant to waive the presentation of mitigating evidence in the sentencing phase of his trial. The first assignment of error is overruled.
 II
Appellant argues that the court erred in granting the State's motion for summary judgment. Appellant argues that he presented evidence in support of his claims of ineffective assistance of counsel. He argues that he presented sufficient evidence that the trial court erred by refusing to appoint counsel for purposes of presenting mitigating evidence on appellant's behalf, and that he was denied a reliable sentencing determination by the failure of the trial court to consider mitigating evidence. The trial court did not err in granting summary judgment on these claims on the basis of res judicata. Not only could such claims have been raised on direct appeal, but these claims were raised on direct appeal. The Ohio Supreme Court specifically held that the trial court did not need to appoint independent counsel to investigate and present mitigating evidence for the court's consideration.85 Ohio St.3d at 63. The court concluded that because appellant was competent to waive the presentation of mitigation, and the court followed proper procedures in allowing him to waive mitigation, appellant cannot now rescind that waiver and argue he is entitled to a new penalty phase merely because he changed his mind. Id. The second assignment of error is overruled.
 III
Appellant argues that the court erred in denying his request for an evidentiary hearing, as the facts cannot be determined from the record. Appellant submitted volumes of evidentiary material in support of his petition for post-conviction relief. Such materials consist primarily of affidavits from people familiar with DeQuincy, Louisiana. These affidavits allege that the environment in which appellant was raised was extremely hostile toward homosexuals, and that appellant's actions in the instant case would have made him a hero in his hometown. All of the evidence submitted by appellant tends to demonstrate that had counsel been appointed to present mitigating evidence, mitigating evidence in the form of evidence concerning appellant's background and upbringing was available. However, because appellant had lawfully waived his right to present evidence in the penalty phase of his trial, such evidence is not relevant at this stage of the proceedings. The third assignment of error is overruled.
 IV
Appellant again argues that the court erred in granting summary judgment on the basis of res judicata, as he presented evidence outside of the record. All of the mitigation material presented by appellant in his petition failed to address the fact that the law, as decided by the Ohio Supreme Court in his case, allows a capital defendant to waive the presentation of all mitigation. The mere presence of potential mitigating evidence does change the legal ruling of the Ohio Supreme Court, and res judicata barred appellant's claims. The fourth assignment of error is overruled.
 V
Appellant argues that Ohio's post-conviction is a sham, and therefore does not comply with the requirements of due process. Appellant generally argues that the post-conviction process is an exercise in futility. We have previously held in a capital case that were the appellant does not go beyond mere conclusory allegations that the process is inadequate, the appellant has not demonstrated that post-conviction relief scheme is unconstitutional. State v. Gilliard (1998), Stark App. No. 1997CA00318, unreported. See, also, State v. Skelnar (1991)71 Ohio App.3d 444, 449 (R.C. 2953.21 is not unconstitutional); State v. Fox (May 16, 1997), Wood App. No. WD-96-031, unreported, (claim that post-conviction relief statute is inadequate, as relief is never granted, is not well taken). Appellant also argues that the court erred in denying him the right to conduct discovery before his petition was denied. R.C. 2953.21(C) expressly provides that the initial determination of whether a post-conviction petition states substantive grounds for relief is to be made based upon the petition and any supporting affidavits, together with the case files and records. Therefore, a petitioner for post-conviction relief is not entitled to discovery during the initial stages of a post-conviction proceeding. Gilliard, supra; State v. Loza (October 13, 1997), Butler App. No. CA96-10-214, unreported; State v. Benner (August 27, 1997), Summit App. No. 18094, unreported. Further, appellant has not demonstrated any prejudice by the court's failure to grant him discovery. Appellant submitted hundreds of pages in support of his petition for post-conviction relief. It does not appear that appellant's presentation of materials in support of his petition was hampered in any way by the court's failure to allow him to conduct discovery. The fifth assignment of error is overruled.
The judgment of the Licking County Common Pleas Court is affirmed.
By Gwin, P.J., Hoffman, J., and Farmer, J., concur