OPINION
Defendant-appellant, Jessie James Cowans, appeals the ruling of the Clermont County Court of Common Pleas to deny his motion for postconviction relief without an evidentiary hearing. We affirm the decision of the trial court.
On Thursday morning, August 29, 1996, Clara Swart, age sixty-nine, was preparing for a Clermont County Senior Services Lunch. Swart was in her residence on Lindale Mt. Holly Road in Clermont County. In order to get to the lunch, Swart was taking the bus to a local restaurant. The last time she was seen alive was at 7:00 a.m., on the driveway of her home. The bus driver arrived approximately one hour later, honked her horn and knocked on the back door of Swart's residence, but Swart did not emerge from the residence. At the time the bus driver arrived, appellant was inside Swart's residence.
Appellant entered Swart's residence and confronted Swart while she was using the commode. Appellant tied Swart to a chair with a telephone cord and tied her by the neck to the refrigerator with an electrical cord. Appellant strangled Swart with a purse strap. After the bus left, appellant filled two pillowcases with stolen items and returned to his residence. Appellant left most of the stolen items in a wooded area in his backyard. He put a clown figurine as well as some jewelry in his room.
Swart's son Timothy discovered the body. An autopsy showed Swart died of asphyxiation due to strangulation. Appellant's palm prints were found on the plastic cover of a mixer in the kitchen. Appellant's wife, Judy Robertson Cowans, who was separated from appellant, informed the police that appellant had left town for several days. Based upon his absence, Sandra Higgins, appellant's parole officer, conducted a parole search of the Cowans residence. Higgins found the clown figurine. With the assistance of a bloodhound, the police found the two pillowcases as well as other items appellant had taken from Swart's residence. Before his arrest, appellant told a neighbor, Mamie Trammel, how terrible it was that someone had hung a lady to a refrigerator. At that point in time, none of the details of the crime had been publicized. At this point in the investigation, appellant was arrested. Appellant later confessed his crime to his cellmate, Marvin Napier. The description appellant gave Napier included details not yet released to the public.
Appellant was indicted on eight counts: (1) aggravated murder; (2) felony murder in the commission of aggravated robbery; (3) felony murder in the commission of burglary; (4) felony murder in the commission of kidnapping; (5) aggravated robbery with serious physical harm; (6) aggravated burglary with physical harm; (7) kidnapping to facilitate the commission of a felony; and (8) kidnapping to terrorize, or inflict serious physical harm upon the victim. The four murder counts each included four separate death penalty specifications: (1) prior murder conviction; (2) aggravated murder committed during an aggravated robbery; (3) aggravated murder committed during aggravated burglary; and (4) aggravated murder committed during kidnapping.
Appellant received a trial by jury and was found guilty on all counts. In the penalty phase, appellant waived the presentation of mitigating evidence. After the penalty phase, the jury recommended the sentence of death. The trial court imposed that penalty as part of appellant's sentence. From that decision, appellant filed a direct appeal as of right to the Supreme Court of Ohio which is currently pending.
Appellant filed a petition for postconviction relief on April 3, 1998. Pursuant to R.C. 2953.21(D), appellee moved for judgment on June 26, 1998.[1] On September 21, 1998, the trial court granted the motion, dismissing all of appellant's claims without an evidentiary hearing. From that decision, appellant filed a timely notice of appeal with this court and presents two assignments of error for our review.
At oral argument for the above-captioned appeal, this courtsua sponte raised the issue of whether we had subject matter jurisdiction over this appeal. This issue arose due to changes in both the direct appeal and postconviction relief procedures for death penalty cases in Ohio. First, for convictions in which the death penalty was imposed, any direct appeal must be filed with the Supreme Court of Ohio as of right. The courts of appeal in Ohio no longer have jurisdiction to decide a direct appeal of any case in which the death penalty is imposed. Sections 2(B)(2)(c) and 3(B)(2), Article IV, Ohio Constitution. Second, a postconviction relief motion must be filed within one hundred eighty days of "the date on which the trial transcript is filed in the supreme court." R.C. 2953.21(A)(2). The question is whether, under these new procedural rules, a court of appeals may rule on a death penalty postconviction relief appeal while the direct appeal remains pending in the Supreme Court of Ohio. Cf. State v. Smith
(Mar. 19, 1996), Butler App. No. CA96-02-024, unreported (direct appeal was adjudicated by the Supreme Court of Ohio before this court ruled on trial court's denial of Smith's postconviction relief motion).
Both parties filed supplemental briefs on this question. The postconviction relief statute, by its procedural structure, provides that a postconviction relief motion must be filed with the trial court within one hundred eighty days after the transcript is filed for the direct appeal. This requirement has placed this court in the position of reviewing the trial court's dismissal of appellant's postconviction relief motion while his direct appeal is still pending in the Supreme Court of Ohio. Nevertheless, the statute, enacted by the legislature, implicitly allows for this possibility. Thus, we conclude that this court does have jurisdiction over this appeal.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN GRANTING THE STATE'S MOTION FOR JUDGMENT PURSUANT TO R.C. 2953.21(D), DISMISSING APPELLANT'S POST-CONVICTION PETITION (T.d. 406) IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
In the first assignment of error, appellant alleges that the trial court erred by dismissing his petition for postconviction relief. Appellant's petition contains twenty separate grounds for relief. Before addressing the merits of these claims, we review Ohio's postconviction relief statute, R.C. 2953.21.
R.C. 2953.21(A)(1) provides that:
 Any person who has been convicted of a criminal offense or adjudged a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
A petitioner is not automatically entitled to an evidentiary hearing upon filing a petition for postconviction relief. Statev. Jackson (1980), 64 Ohio St.2d 107, 110. In determining whether a hearing is warranted, a petitioner bears the initial burden to provide evidence containing sufficient operative facts to demonstrate a cognizable claim of constitutional error. State v.Kapper (1983), 5 Ohio St.3d 36, 37-38, certiorari denied,464 U.S. 856, 106 S.Ct. 174.
A claim for postconviction relief may be dismissed as resjudicata. A claim is res judicata if it was raised or could have been fairly raised at trial, or on direct appeal where the defendant had appellate counsel. State v. Cole (1982), 2 Ohio St.3d 112,115. An exception may apply if the petitioner provides "competent, relevant, and material evidence" dehors the record.State v. Smith (1985), 17 Ohio St.3d 98, 101. The evidencedehors the record cannot merely repackage similar evidence or issues that could have been raised on direct appeal. State v.Lawson (1995), 103 Ohio App.3d 307, 315. The evidence dehors
the record must materially advance a constitutional claim of the petitioner. Id. If the new evidence is "marginally significant and does not advance the petitioner's claim beyond a mere hypothesis and a desire for further discovery," resjudicata still applies to the claim. Keeping these standards in mind, we address appellant's twenty claims for postconviction relief.
In the first claim for relief, appellant argues that the three-page limit imposed to argue each ground for relief in a petition for postconviction relief is unconstitutional. See Crim.R. 35(A). Although Crim.R. 35(A) does require brevity in arguing each individual claim, we find the page limitation constitutional. See State v. Clemons (Apr. 30, 1999), Hamilton App. No. C-980456, unreported, at 5-6, citing State v. Davis
(1991), 62 Ohio St.3d 326. Thus, the first claim for relief is without merit.
In the second claim for relief, appellant argues that the trial court failed to give a "unanimity" charge for the death penalty specifications, which attached to appellant's crimes. A "unanimity" charge would inform the jury that all twelve jurors must agree on which aggravating circumstance the jury was using in order to justify the sentence of death. This claim does not include any evidence dehors the record which would justify an evidentiary hearing on this claim, and the claim can be fully litigated upon direct appeal. The claim is, therefore, resjudicata.
In the third claim for relief, appellant argues that his trial counsel was ineffective by failing to protect appellant's constitutional right to have mitigating evidence presented during the penalty phase of the trial. To demonstrate ineffective assistance of counsel, appellant must satisfy a two prong test: (1) show that counsel's representation fell below an objective standard of reasonableness; and (2) show that counsel's actions prejudiced appellant at trial. Strickland v. Washington (1984),466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068. Prejudice means "a reasonable probability that, but for counsel's actions, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068. Moreover, an appellate court may assume deficient performance "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." State v. Loza (1994), 71 Ohio St.3d 61, 83. It is settled that "where a defendant is represented by new counsel on appeal, a claim of ineffective assistance of counsel is capable of [direct] review and therefore may be barred under the doctrine ofres judicata from being raised in a later postconviction relief petition." Lawson at 316.
At the beginning of the penalty stage of the trial, appellant informed the court that he did not want any mitigating evidence presented on his behalf. In addition, appellant informed the court that he did not wish to make any statement on his behalf, whether under oath or not under oath. The court had the following colloquy with appellant on April 10, 1997:
 THE COURT: Mr. Cowans, you heard what your attorney has stated to me. First of all, is it my understanding you do not wish to present any evidence in mitigation, sir?
THE DEFENDANT: Yes, sir.
 THE COURT: Is it also my understanding that you instructed the witnesses not to —
THE DEFENDANT: Yes, sir.
 THE COURT: — assist and participate with the experts that are going to testify?
THE DEFENDANT: Yes.
 THE COURT: Do you mind telling me why, Mr. Cowans, you do not wish to proceed in a mitigation hearing?
 THE DEFENDANT: I feel that it would be biased. I feel that I can't get a fair shake out of a jury that found me guilty on something I didn't do.
 THE COURT: You understand, Mr. Cowans, that if you do not offer any evidence in mitigation the jury will probably come but to one decision and that is the death penalty?
 THE DEFENDANT: That's the decision they're gonna come to anyway.
 THE COURT: You understand further, sir, that your attorney —
THE DEFENDANT: Yes, I understand it all, sir.
 THE COURT: You know your attorneys have prepared for the mitigation hearing by —
 THE DEFENDANT: And under my direction I don't want no mitigation hearing.
 THE COURT: You understand they do have witnesses that they are ready to put on through?
THE DEFENDANT: No, no witnesses, nothing.
 THE COURT: All right. But you do understand they are available?
THE DEFENDANT: Yes, I do, I understand that.
The following day, April 11, 1997, the court had the following colloquy with appellant, his trial counsel and the court:
 Mr. Wallace: Your honor, we have discussed again with Jessie this morning, Mr. Kelly and myself along with Mr. Crates and Dr. Smalldon have met with Jessie again this morning to again discuss the decision put on the record yesterday. It is again our understanding that even after further consideration and discussion Mr. Cowans does not wish us to present any evidence or testimony in mitigation in this matter. It is further our understanding that after discussion and being advised about the possible consequences Mr. Cowans does not wish to make any statement to the court, to the jury either sworn or unsworn on his own behalf at any time during the remainder of these proceedings.
 For the record Mr. Cowans is aware that Dr. Jeff Smalldon, is in fact, present, is here in the courtroom, has testimony prepared to go forward immediately should Mr. Cowans have changed his mind overnight —
THE DEFENDANT: (Shaking head.)
 MR. WALLACE: — or this morning and is prepared to offer testimony which would be in mitigation in this matter. This has been, again, discussed with Mr. Cowans, it has been discussed with him the nature of the proposed testimony, he is aware of that and despite all of these facts he is still specifically directing Mr. Kelly and myself not to offer any testimony or evidence on his behalf today.
THE DEFENDANT: (Nodding head.)
 THE COURT: You understand — is that a correct statement, Mr. —
THE DEFENDANT: Yes, sir.
THE COURT: — Cowans?
THE DEFENDANT: Yes, sir.
 THE COURT: You understand you have the right to present testimony?
THE DEFENDANT: Yes.
 THE COURT: And you decided not to; is that correct, sir?
THE DEFENDANT: Yes, sir.
 THE COURT: In addition to that you have the right to make a statement on your behalf to the jury either under oath or not under oath.
THE DEFENDANT: (Shaking head.) No.
 THE COURT: If it's not under oath it's not subject to cross-examination, you understand that?
THE DEFENDANT: Yes, I do understand that.
 THE COURT: You do not wish to make a statement to the jury, sir?
THE DEFENDANT: No, sir.
As discussed further in the fifth claim for relief, we have reviewed the evidence dehors the record and do not believe it presents any evidence that appellant was legally incompetent when he waived mitigation. Accordingly, trial counsel was entitled to respect appellant's wishes. The trial record indicates trial counsel attempted to convince appellant of the folly of his actions and would have preferred to present all relevant mitigation on appellant's behalf. Without sufficient evidencedehors the record to support appellant's claim, the issue could have been raised on direct appeal and the trial court properly concluded that appellant's claim was res judicata.[2]
In the fourth claim for relief, appellant argues that his trial counsel was ineffective by failing to request that the trial court appoint an independent counsel to present mitigating evidence after appellant refused to allow his trial counsel to present mitigating evidence. Appellant claims that, by refusing to allow his trial counsel to present mitigating evidence in the penalty phase, the attorney-client relationship had broken down. The evidence dehors the record appellant provides is the affidavit of Kristen E. Haskins, Psy.D, whose private practice specializes in clinical and forensic psychology. In paragraph sixteen of her affidavit, Haskins states:
 Once [appellant] was found guilty with death penalty specifications, [appellant] refused to have any mitigation presented in his case. This refusal was deeply rooted in his severe personality pattern disturbance and the fact that his defense team had not been able to establish a sufficient relationship to weather through his mistrust, poor coping skills, and underlying anger and hostility. Descriptions of his loss of control and outbursts in the court room and his refusal of mitigation suggest his coping resources had been so severely depleted by the stress of the trial and that he was possibly psychologically decompensated to the point that he was unable to competently proceed.
We find nothing in this statement, beyond speculation, to suggest that appellant was legally incompetent to waive the presentation of mitigation. Moreover, the fact, by itself, that appellant refused mitigation does not suggest the attorney-client relationship had broken down. Finally, the Supreme Court of Ohio has found that there is no constitutional requirement that a defendant present mitigating evidence in the penalty phase.Ashworth, 85 Ohio St.3d at 63-66.
In the fifth claim for relief, appellant argues that trial counsel was ineffective by failing to request a competency evaluation after appellant waived the presentation of mitigating evidence. In Ashworth, the court stated that "[a] defendant is mentally competent to forgo the presentation of mitigating evidence in the penalty phase of a capital case if he has the mental capacity to understand the choice between life and death and to make a knowing and intelligent decision not to pursue the presentation of evidence. The defendant must fully comprehend the ramifications of his decision and must possess the ability to reason logically, i.e., to choose means that relate logically to his ends." Id. at 69. However, as noted, a competency evaluation is not required in every circumstance in which a defendant waives mitigation in the penalty phase of a capital case. Id. at 62. "[A]bsent a request by counsel, or any indicia of incompetence, a competency evaluation is not required." Id.
As we stated in the fourth claim for relief, we do not find the record suggests appellant may have been legally incompetent when he waived mitigation. Dr. Haskins' affidavit, while replete with the particulars of appellant's "severe personality pattern disturbance," does not provide any credible evidence that appellant was legally incompetent during the penalty phase of his trial. We fail to see any evidence dehors the record which would justify an evidentiary hearing on this claim. Therefore, the claim can be addressed on direct appeal and is, therefore, resjudicata.
In his sixth claim for relief, appellant argues that his trial counsel was ineffective by failing to proffer the result of a psychological examination of appellant given by Jeffrey L. Smalldon, Ph.D. We have reviewed Dr. Smalldon's affidavit. The affidavit contains numerous examples of potentially mitigating evidence as well as Dr. Smalldon's medical conclusion that appellant's refusal to present mitigation may be related to his personality disorder. The affidavit does not state that appellant was legally incompetent to waive mitigation in the penalty phase. We do not believe the Smalldon affidavit reaches the threshold standard of cogency which would justify an evidentiary hearing on this claim.
In his seventh claim for relief, appellant argues that the trial court erred by failing to order a psychological examination of appellant after he waived mitigation. For the reasons given in our discussion of the fifth claim for relief, we find this claim is not well-taken.
In his eighth claim for relief, appellant argues that the trial court erred by denying his motion for change of venue based on media publicity regarding the case. Appellant claims this issue is not res judicata based on a jury questionnaire and newspaper articles dehors the record. However, this evidence is part of the trial record and was considered in the trial court's decision. Thus, the eighth claim could have been raised on direct appeal and is barred by res judicata.
In his ninth claim for relief, appellant argues that his trial counsel was ineffective by failing to establish the blood type on a cotton swab taken from the crime scene. Appellant does not provide any evidence dehors the record to support this claim. This claim could have been raised on direct appeal and is therefore res judicata.
In the tenth claim for relief, appellant argues that trial counsel was ineffective by failing to introduce expert testimony concerning the "super-glue" method of identifying and preserving fingerprints. The "super-glue" method was utilized to identify appellant's palm prints on the plastic mixer cover found in the victim's kitchen. We do not find any evidence dehors the record to support this claim. We conclude this claim raises an issue appropriate for direct appellate review and is, therefore, resjudicata.
In the eleventh claim for relief, appellant argues that his trial counsel was ineffective by failing to conduct an adequate voir dire. Appellant argues that two biased jurors were impaneled to decide his case. Appellant bases his claim on jury questionnaires completed by Jim Coffman and Linda LaDow. However, the relevant portion of the jury questionnaires were read into the record during voir dire. This claim can be fully litigated upon direct appeal and is, therefore, res judicata.
In his twelfth claim for relief, appellant argues that the trial court deprived appellant of a fair trial by not suasponte excusing jurors Coffman and LaDow. For the reasons given in the discussion of the eleventh claim for relief, we find this claim is res judicata.
In his thirteenth claim for relief, appellant argues that his trial counsel was ineffective by failing to sufficiently challenge the validity of a warrantless search. Specifically, he argues counsel failed to raise whether the consent given by his wife to search their residence was valid. Appellant presents, by his affidavit, evidence dehors the record that he would not have consented to a search of his separate bedroom. The trial court, in dismissing claim thirteen, concluded that the search was based on the reasonable belief of the police that appellant's wife had the authority to consent to the search. Illinois v. Rodriguez
(1990), 497 U.S. 177, 188-89, 119 S.Ct. 2793, 2801. We agree with the reasoning and conclusion of the trial court. Appellant's trial counsel filed a motion to suppress and we cannot conclude their actions fell below any objective standard of reasonableness. Thus, the thirteenth claim for relief is not well-taken.
In his fourteenth claim for relief, appellant argues that the trial court erred by admitting evidence seized during the warrantless search of the Cowans' residence. Based on the reasoning given in our analysis of the previous claim, we find this claim is not well-taken.
In the fifteenth claim for relief, appellant argues that his trial counsel was ineffective by failing to refute certain incriminating evidence with expert witnesses. Specifically, appellant claims his trial counsel failed to sufficiently investigate other possible suspects, and failed to request funds to hire an expert to establish a time of death and a bloodhound expert. In support of this claim, appellant presents three exhibits: his own affidavit, the affidavit of Steven Schlechty, the Chaplain at the Clermont County Jail, and the affidavit of Judy Robertson Cowans, appellant's wife.
Having reviewed all of these exhibits, none of them present any evidence dehors the record sufficient to support this claim. The fact that appellant states a different version of events in an affidavit and claims he did not kill the victim, without any independent evidence, does not justify an evidentiary hearing on this claim. The affidavits of Schlechty and Judy Robertson Cowans also do not include any evidence dehors the record which would justify an evidentiary hearing.
In the sixteenth claim for relief, appellant argues that the trial court erred by not suppressing incriminating statements appellant made to Deputy Robert Evans. We find this claim raises an issue which is capable of being fully litigated upon direct appeal. The evidence dehors the record, appellant's affidavit, lacks sufficient cogency to justify an evidentiary hearing. Thus, the claim is res judicata.
In the seventeenth claim for relief, appellant argues that the trial court erred by overruling appellant's motion for twelve peremptory challenges. "Ohio law permits only six peremptory challenges in a death penalty case * * *." State v. Mills (1992),62 Ohio St.3d 357, 365. We find this claim can be fully litigated on direct appeal and is, therefore, res judicata.
In the eighteenth claim for relief, appellant argues that the trial court erred by failing to sua sponte request that both trial counsel for appellant and the prosecution provide a gender neutral reason for each peremptory challenge. See J.E.B. v. Alabamaex rel. T.B. (1994), 511 U.S. 127, 146, 114 S.Ct. 1419, 1430 (holding that the Equal Protection Clause prohibits discrimination in jury selection on the basis of gender). However, counsel need not provide such an explanation unless "the opponent of a peremptory challenge has made out a prima facie case of discrimination[.]"Purkett v. Elem (1995), 514 U.S. 765, 767, 115 S.Ct. 1769, 1770. We find this claim does not raise any evidence dehors the record to support a finding of discrimination and could have been raised on direct appeal. The claim is, therefore, res judicata. For the same reason, appellant's nineteenth claim, that his trial counsel was ineffective by failing to object to the trial court's decision that counsel for the prosecution and appellant need not provide a reason for each peremptory challenge, is res judicata.
In the twentieth claim for relief, appellant argues that the death penalty, when administered by electrocution, is cruel and unusual punishment pursuant to the Eighth Amendment to the United States Constitution. We find this claim raises an issue which can be fully litigated upon direct appeal and is, therefore, resjudicata.
Upon review, we find that none of appellant's twenty claims for postconviction relief warrant an evidentiary hearing. Thus, the first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN FAILING TO RULE ON APPELLANT'S MOTIONS FOR REQUEST OF FUNDS FOR EXPERT ASSISTANCE (T.d. 388, 390) EFFECTIVELY OVERRULING THE MOTIONS BEFORE IT DISMISSED APPELLANT'S POST-CONVICTION PETITION IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH
AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION.
In the second assignment of error, appellant argues that the trial court erred by failing to provide funds for expert assistance. The expert assistance was requested in order to prove appellant's claims that his trial counsel provided ineffective assistance by failing to introduce expert testimony on a variety of issues. We have previously ruled that a petitioner for postconviction relief has no right to discovery until it is determined an evidentiary hearing is warranted. State v. Smith
(Aug. 31, 1998), Butler App. No. CA97-12-223, unreported, citingState v. Smith (1986), 30 Ohio App.3d 138, 140. Similarly, appellant has no right to funds for expert assistance to pursue discovery until it is determined an evidentiary hearing is warranted. Thus, the second assignment of error is overruled.
Judgment affirmed.
WALSH and VALEN, JJ., concur.
[1] Appellant argues that appellee's motion was for summary judgment and that appellee did not meet the burden imposed on the moving party for granting summary judgment pursuant to Civ.R. 56(C). We find that appellant moved for judgment, analogous to Civ.R. 12, and the trial court properly entered judgment in appellee's favor. See State v. Lawson (1995), 103 Ohio App.3d 307,313.
[2] We note that in State v. Ashworth (1999), 85 Ohio St.3d 56, the Supreme Court of Ohio addressed the standard a trial court must follow to ensure a waiver of mitigation by a defendant is knowing and voluntary. This issue was not raised in appellant's postconviction relief petition. In any event, the issue could be fully litigated upon direct appeal. A petition for certiorari inAshworth was filed with the United States Supreme Court on July 27, 1999.