OPINION
{¶ 1} Defendant-appellant, Robert W. Bethel, was sentenced to death for the 1996 murders of James Reynolds and Shannon Hawks. Because of statutory filing deadlines in Ohio's capital appeals scheme, Bethel filed his petition for post-conviction relief ("petition") with the trial court while his direct appeal was still pending before the Supreme Court of Ohio. The Supreme Court of Ohio affirmed Bethel's convictions and death sentence on October 4, 2006 and, on August 31, 2007, the trial court dismissed the *Page 2 
petition. This appeal is limited to the trial court's dismissal of the petition. Because of the substantial overlap of subject matter between the petition and the direct appeal, however, we are without authority to grant the relief requested.
 {¶ 2} We are not at liberty to re-decide any issues that were already decided by the Supreme Court of Ohio unless the appellant presents some new evidence or factual information that was unavailable on direct appeal. Similarly, any argument that was previously raised, or could have been raised, is barred under the doctrine of res judicata. The record before us is void of any new evidence or factual information that would be material to the issues raised in the petition and, therefore, we must affirm the trial court's dismissal.
 {¶ 3} The facts surrounding Bethel's arrest and conviction are set forth in detail in the Supreme Court of Ohio's decision in the direct appeal. State v. Bethel, 110 Ohio St.3d 416, 2006-Ohio-4853,854 N.E.2d 150, at ¶ 1. We will therefore only restate the key elements here.
 {¶ 4} Bethel belonged to the "Crips" street gang. In 1995, a fellow gang member and closely known associate of Bethel's shot another man during a burglary. James Reynolds witnessed that shooting and told others about it. The shooter was later indicted for aggravated murder, with death specifications, and Reynolds was the only material witness against him.
 {¶ 5} According to Bethel's roommate, also a fellow Crips gang member, Bethel was concerned about Reynolds, and expressed intentions to get rid of him. On June 13, 1996, Bethel and another one of his other roommates, also a Crips gang member, purchased 12-gauge shotguns from a gun store in Obetz, Ohio. Thirteen days later, *Page 3 
Reynolds and his girlfriend, Shannon Hawks, were found dead — shot 14 times collectively, with 9mm and 12-gauge shotgun ammunition. Their bodies were discovered in a field owned by the grandfather of Bethel's roommates.
 {¶ 6} A few weeks later, Bethel told one of his roommates that he and another roommate shot Reynolds and Hawks, using a 9mm handgun and a shotgun. Bethel later confessed his part in the murders to his girlfriend. About six months after the murders, police executed a search warrant on the trailer where Bethel and his roommates lived, but apparently did not find enough evidence to file charges.
 {¶ 7} Years later, the roommate to whom Bethel had previously confessed was indicted on unrelated federal firearms charges. In an effort to work out a deal with the feds, he offered information implicating Bethel in the Reynolds-Hawks murders. Police eventually arrested Bethel on November 6, 2000, and a grand jury indicted him for two counts of aggravated murder, both with death specifications.
 {¶ 8} Although the state's case against Bethel was strong, Bethel's court-appointed counsel ultimately convinced the prosecutors to spare Bethel's life in exchange for testimony against the other shooter. Bethel agreed to the deal, and recorded a statement at the Franklin County Sheriff's Office on August 30, 2001.[1] Paragraph one of the written plea agreement stated the following:
 Defendant and the State agree that the proffer taken of the defendant on August 30, 2001 will be admissible in a criminal trial against the defendant in the event that the defendant does not abide by the terms and conditions of this agreement
 {¶ 9} The agreement later contained the following contradictory statement: *Page 4 
 * * * Should it be judged by the Franklin County Prosecutor's office at any time that the defendant has failed to cooperate fully; refused to testify or testifies falsely in any proceeding(s); has intentionally given false, misleading or incomplete information or testimony; or has otherwise violated any provision of this agreement, then the Franklin County Prosecutor's Office may declare this Agreement null and void. The Franklin County Prosecutor's Office may then automatically reinstate the original charges against the defendant, as well as file any additional charges. * * * In the event this Agreement becomes null and void, then the parties will be returned to the position they were in before this Agreement. * * *
 {¶ 10} The trial court held a closed hearing on the record, in which Bethel acknowledged his understanding and intent to be bound by the terms of the plea deal. Despite that agreement, on November 13, 2001, Bethel refused to testify. The state moved to declare the plea deal void, and the trial court granted the motion.
 {¶ 11} Represented by new counsel, Bethel moved to suppress his confession, but the trial court denied the motion, and admitted it into evidence.
 {¶ 12} Bethel testified at his trial, and denied having any involvement in the shootings. He said that although he had been in a car with the victims on the night of the murder, he dropped them off somewhere on the west side of Columbus around 9:00 p.m. Bethel's mother testified that her son and his roommate were at her house on Columbus' southside between 10:00 and 11:00 p.m., the time during which gunshots were heard in the vicinity of the murder scene.
 {¶ 13} The jury found Bethel guilty of all charges and specifications, and recommended death sentences for both killings. The trial court imposed the *Page 5 
recommended sentence on September 4, 2003. The Supreme Court of Ohio found the appeal "devoid of merit," and overruled all 20 propositions of law.
 {¶ 14} Bethel's petition comprised 23 grounds for relief (as amended June 15, 2007). The trial court determined that the gravamen of Bethel's claims for relief were res judicata, but nonetheless, in a 25 page decision, attended to each individual claim. (Record, at 609.) Ultimately, the trial court could not find any evidence presented by Bethel to warrant the relief requested, and dismissed his petition.
 {¶ 15} Bethel filed a timely notice of appeal from that decision, and assigns three errors for our consideration:
 [I.] THE TRIAL COURT ERRED WHEN IT DENIED THE POST-CONVICTION PETITION WITHOUT FIRST ALLOWING BETHEL TO CONDUCT DISCOVERY.
 [II] THE TRIAL COURT ERRED WHEN IT DENIED BETHEL'S MOTION FOR FUNDS TO EMPLOY EXPERTS.
 [III] THE TRIAL COURT ERRED IN DISMISSING BETHEL'S POST-CONVICTION PETITION WHEN HE PRESENTED SUFFICIENT OPERATIVE FACTS TO MERIT RELIEF OR, AT MINIMUM, AN EVIDENTIARY HEARING.
 {¶ 16} The post-conviction relief process is a statutory method by which criminal defendants may bring a collateral civil attack on their convictions and sentences. R.C. 2953.21; State v. Calhoun, 86 Ohio St.3d. 279, 281, 1999-Ohio-102, 714 N.E.2d 905; State v. Steffen,70 Ohio St.3d 399, 410, 1994-Ohio-111, 639 N.E.2d 67; State v.McKinney, Franklin App. No. 07AP-868, 2008-Ohio-1281. Again, post-conviction relief is not an appeal of the judgment; rather, it is intended as a means to reach constitutional issues that would otherwise be impossible to reach because the evidence supporting those arguments is outside of the trial court record (e.g., ineffective assistance of counsel, *Page 6 
prosecutorial misconduct, newly-discovered evidence). Steffen, supra;State v. Murphy (Dec. 26, 2000), Franklin App. No. 00AP-233.
 {¶ 17} After conviction, defendants have 180 days to file a petition with the trial court. R.C. 2953.21(A)(2). The time for filing begins to run when the transcript is filed in the court of appeals, or in capital cases, from the time the transcript is filed in the Supreme Court of Ohio. Id; see Section 2(B)(2)(c), Article IV, Ohio Constitution (as amended Nov. 8, 1994) (eliminating intermediate appeal in capital cases, and giving death row prisoners an appeal to the Supreme Court of Ohio as a matter of right).
 {¶ 18} In any proceeding except a direct appeal from that judgment, the doctrine of res judicata bars convicted defendants who were represented by counsel from raising or litigating any defense or alleged due process violation resulting in a conviction, where that defense or error was previously raised (or could have been raised) on direct appeal. State v. Cole (1982), 2 Ohio St.3d 112, 113, 443 N.E.2d 169. Res judicata, thus, "implicitly bars a petitioner from `re-packaging' evidence or issues which either were, or could have been, raised in the context of the petitioner's trial or direct appeal." State v.Hessler, Franklin App. No. 01AP-1011, 2002-Ohio-3321, at ¶ 37.
 {¶ 19} There is a narrow exception to this rule with regard to claims of ineffective assistance of counsel — res judicata will only bar such claims that do not rely on evidence outside the record, and defendant is represented by new counsel on appeal. Cole, supra, at 113-114;Samatar v. Clarridge (C.A.6, 2007), 225 Fed.Appx. 366.
 {¶ 20} The first assigned error alleges that, as the petitioner in a civil matter, Bethel was entitled to discovery under the Ohio Rules of Civil Procedure. This argument is specifically refuted by mandatory case law, which prevents us from even considering it. *Page 7 
 {¶ 21} To avoid the effects of res judicata, criminal appellate counsel typically attempt to develop new factual information to be considered in petitions. As in any other ordinary civil proceeding, the way attorneys do this is through discovery. This is exactly what Bethel's counsel sought to do in the post-conviction proceeding.
 {¶ 22} Although it makes sense — since post-convictions are civil proceedings — to conduct discovery in accordance with the civil rules, the Supreme Court of Ohio has held that petitioners are not automatically entitled to civil discovery. See State ex rel. Love v.Cuyahoga Cty. Prosecutor's Office, 87 Ohio St.3d 158, 159,1999-Ohio-314, 718 N.E.2d 426 (per curiam) certiorari denied (2000),529 U.S. 1116, 120 S.Ct. 1977 (citing State v. Spirko [1998],127 Ohio App.3d 421, 429, 713 N.E.2d 60, appeal not allowed, 83 Ohio St.3d 1430,699 N.E.2d 946); see, also, State v. Gulertekin (June 8, 2000), Franklin App. No. 99AP-900 (holding that during initial stages of post-conviction relief proceedings there is no right to discovery of evidence outside the record) (quoting State v. Wickline [1994], 71 Ohio St.3d 1430;State v. Fugett [Dec. 8, 1998], Franklin App. No. 98AP-396).
 {¶ 23} In Love, the petitioner was convicted of voluntary manslaughter and aggravated robbery. Years later, he filed an original action in mandamus in the court of appeals to compel the Cuyahoga County Prosecutor's Office to turn over ballistics and autopsy reports relevant to the criminal trial. He claimed that he was entitled to these records because they constituted exculpatory evidence, which supported his post-conviction relief. The court of appeals denied the writ, and the Supreme Court affirmed. This holding is based on the court's interpretation of post-conviction proceedings as a statutorily-created right, and because the statute granting the right does not specifically include the right to civil discovery, the court has concluded that none exists. See *Page 8 Calhoun, supra, at 281 (citing Murray v. Giarratano [1989], 492 U.S. 1,10, 109 S.Ct. 2765) ("State collateral review itself is not a constitutional right."); cf. State v. Scudder (1998),131 Ohio App.3d 470, 481, 722 N.E.2d 1054 (Tyack, J., dissenting). The irony here is that post-conviction relief is specifically designed to allow defendants who believe they were wrongly convicted to attack their convictions using material outside of the trial court record, but if they are not entitled to discovery, there is little chance they will ever obtain any evidence or defenses that are outside of the record.
 {¶ 24} The reason for the Supreme Court of Ohio's strong stance limiting petitioners' rights in post-conviction proceedings is summed up as follows:
 It may be useful to note that cases of post-conviction relief pose difficult problems for courts, petitioners, defense counsel and prosecuting attorneys alike. Cases long considered to be fully adjudicated are reopened, although memories may be dim[,] and proof difficult. The courts justifiably fear frivolous and interminable appeals from prisoners who have their freedom to gain and comparatively little to lose.
Calhoun, at 282 (quoting State v. Milanovich [1975], 42 Ohio St.2d 46,51, 325 N.E.2d 540).
 {¶ 25} Bethel's counsel asserts that these limitations on discovery are inconsistent with due process and equal protection. See appellant's brief, at 10, citing Evitts v. Lucey (1985), 469 U.S. 387, 401,105 S.Ct. 830 (requiring states that provide appellate review to do so in accordance with the Due Process Clause). Be that as it may, we are not the proper authority to consider the merits of this argument. If there is indeed a federal right to discovery in post-conviction proceedings, that right must either be recognized by the Supreme Court of Ohio, or forced upon them by a federal court. See, e.g., Keener v. Ridenour
(C.A.6, 1979), 594 F.2d 581, 590 (holding that in habeas proceedings, the *Page 9 
federal courts may review issues not previously decided by state courts of Ohio). Until then, stare decisis prevents us from ruling in a manner that conflicts with that of the Supreme Court of Ohio. See, e.g.,Sherman v. Millhon (June 16, 1992), Franklin App. No. 92AP-89 (citingBattig v. Forshey [1982], 7 Ohio App.3d 72, 74; Thacker v. Bd. ofTrustees of Ohio State Univ. [1971], 31 Ohio App.2d 17, 23,285 N.E.2d 380 reversed on other grounds) ("A court [of appeals] is bound by and must follow decisions of the Ohio Supreme Court, which are regarded as law unless and until reversed or overruled."); cf. Keener, ibid. ("Interpretation of Ohio's appellate and post-conviction remedies belongs with the highest judicial tribunal of Ohio, not with the federal courts of appeal. Amendment of statutes is the prerogative of the Ohio Legislature").
 {¶ 26} Stare decisis has two aspects: (1) that in the absence of overriding considerations courts will adhere to its own previously announced principles of law; and (2) that courts are bound by and must follow decisions of a reviewing court that has decided the same issue.Thacker, ibid; Helvering v. Hallock (1940), 309 U.S. 106, 119,60 S.Ct. 444. "Under this principle, we are bound by and must follow the decisions of the Ohio Supreme Court. To do otherwise would do violence to the doctrine that ours is a government of law, not of men."Thacker, ibid.
 {¶ 27} The Supreme Court of Ohio is, of course, free to overrule its own prior decisions, but until it does so, we have no choice but to follow the rule of law set forth in Love. We realize that this decision may be inimical to the concept that petitions are civil proceedings, however, the Love court has already decided that petitioners in post-conviction proceedings are not automatically entitled to discovery, and we are bound by that decision. Id. at 159. *Page 10 
 {¶ 28} Accordingly, we must overrule the first assigned error.
 {¶ 29} In the second assignment of error, Bethel argues that in post-conviction proceedings, Ohio courts are required to provide indigent petitioners with funds to retain whatever experts may be reasonable and necessary. (Appellant's brief, at 10.) The experts for whom Bethel sought funding were related to the fields of forensic pathology and psychology, ballistics, and capital criminal defense. The trial court denied Bethel's request in the same manner as the petition. (Decision, 11, 15, 16, 24.)
 {¶ 30} Although the experts sought may have been appropriate and helpful during Bethel's trial, counsel already made this argument on direct appeal, which resulted in the Supreme Court's determination that any evidence by such experts was purely speculative. Further, the Supreme Court found that the exclusion or omission of these experts did not prejudice Bethel:
 Bethel contends that his trial counsel were ineffective because they failed to obtain defense experts on false confessions, ballistics, forensics, and crime-scene reconstruction. We find that Bethel was not prejudiced by trial counsel's actions. * * *
Bethel, at ¶ 168.
 {¶ 31} We are not in a better position to know the results of such expert investigation than the Supreme Court of Ohio, trial counsel, or the trial court. Thus, we are not in a position to grant the experts Bethel seeks.
 {¶ 32} Accordingly, the second assignment of error is overruled.
 {¶ 33} The third assignment of error attacks the trial court's failure to conduct an evidentiary hearing before dismissing the post-conviction petition. As in the discovery issue, the law on this issue has been set forth by the Supreme Court of Ohio: Petitioners *Page 11 
are not automatically entitled to an evidentiary hearing. State v.Jackson (1980), 64 Ohio St.2d 107, 413 N.E.2d 819, syllabus. Before a trial court may grant an evidentiary hearing, the petitioner bears the burden of demonstrating a cognizable claim of a constitutional error at trial. R.C. 2953.21(C); Jackson, ibid; Hessler, at ¶ 33. A trial court may deny a defendant's petition without an evidentiary hearing if the petition, supporting affidavits, documentary evidence, and trial record do not demonstrate sufficient operative facts to establish substantive grounds for relief. Calhoun, at paragraph two of the syllabus.
 {¶ 34} Nonetheless, to consider whether the trial court erred in failing to conduct an evidentiary hearing, we must address the individual grounds for relief asserted in the petition. If the evidence supporting any ground for relief demonstrates a colorable claim of constitutional error at trial, only then may we find that the trial court erred.
 {¶ 35} As amended, the petition alleges 23 grounds for relief. Fifteen of those are ineffective assistance of counsel allegations, in violation of the Sixth and Fourteenth Amendments of the United States Constitution.
 {¶ 36} Under Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, defendants alleging ineffective assistance of counsel must demonstrate that: (1) defense counsel's performance was so deficient that he or she was not functioning as the counsel guaranteed by theSixth Amendment; and (2) defense counsel's errors prejudiced the defendant, depriving him of a trial whose result is reliable. State v.Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258. In post-conviction proceedings, to secure a hearing on such a claim, appellant bears the initial burden of submitting evidence demonstrating that defense *Page 12 
counsel was incompetent, and that the appellant was prejudiced as a result. Cole, at 114; Jackson, syllabus. "Judicial scrutiny of counsel's performance must be highly deferential [and] [a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, at 689;Bradley, at 142.
 {¶ 37} The Supreme Court of Ohio devoted an entire section of its opinion to ineffective assistance of counsel allegations, which included 36 enumerated paragraphs. Again, we are without authority to re-address those issues. They are matters decided, i.e., res judicata.
 {¶ 38} The petition's first ground for relief alleges that the first set of lawyers appointed to represent Bethel were ineffective because they failed to adequately investigate the case and, as a result, unduly influenced Bethel toward entering into the plea agreement. Bethel recorded a proffer statement confessing his involvement in the homicides, and he agreed to testify against a co-defendant. When Bethel refused to testify, the plea agreement fell apart, but the state used Bethel's proffer as substantive evidence of his guilt at his trial. This placed Bethel's defense lawyers in the difficult position of arguing at trial that Bethel was lying in his proffer statement — when he provided, in graphic detail, the execution-style murder of the two teenage victims.
 {¶ 39} The Supreme Court of Ohio addressed the proffer in ¶ 160-167 of the opinion. Bethel has not presented any additional evidence (not available at trial) to support the petition. We are therefore bound by the Supreme Court's resolution of the issue. The first ground for relief has no new merit.
 {¶ 40} The second ground for relief alleges that original counsel for Bethel failed to do a complete investigation of mitigating evidence, and therefore wrongly advised Bethel *Page 13 
that he either could plead guilty, or be assured of a jury verdict enabling his execution. In support of this argument, appellate counsel notes that the jury who ultimately returned the death verdict did so after only three days of deliberation, despite minimal mitigation evidence being presented.
 {¶ 41} The Supreme Court did not address the specific language stated in the petition but, generally, rejected any notion that Bethel's attorneys acted less than competent in advising Bethel during the plea negotiations:
 We reject Bethel's contention that [counsel] were unprepared for the trial and forced Bethel into a plea agreement. Bethel's claim that his attorneys would betray him in order to avoid trial is incredible and has no evidentiary support. All indications are that [counsel] sought and recommended a plea agreement because they were working in Bethel's best interest.
 * * *
 In sum, we lack a factual basis for finding that [counsel] committed errors amounting to deficient performance. Thus, we reject Bethel's claims that [counsel] provided ineffective assistance of counsel.
Bethel, at ¶ 165, 167.
 {¶ 42} The information about trial counsel's preparedness was available at the time the trial court ruled on Bethel's motion to suppress the proffer statement. As such, it is neither new, nor newly-discovered evidence for the purposes of post-conviction relief. The doctrine of res judicata again compels us to find no merit in the second ground for relief. *Page 14 
 {¶ 43} The third ground for relief further attacks the plea agreement and proffered confession. The Supreme Court also addressed this argument. Id. at ¶ 160-167. We are therefore compelled to find no merit in this ground for relief.
 {¶ 44} In the fourth ground for relief, Bethel alleges that trial counsel was ineffective based upon their failure to present psychological evidence in the culpability phase of the trial. The theory is that counsel was ineffective in failing to present psychological evidence as to why Bethel supposedly lied in his proffer statement (and on two other occasions in which he told friends he was the murderer). Obviously, a psychologist who concluded that Bethel told the truth in his proffer statement but was lying in submitting an alibi defense at trial would not have been a help in his defense during the culpability phase of the trial. A psychologist who could explain the complex relationship Bethel had with his mother and how her begging him to plead guilty in order to save his life might have been helpful, but not to the point that the failure of counsel to seek and find such a witness could be ineffective assistance of counsel, as required underStrickland. We find no merit in the fourth ground for relief.
 {¶ 45} The fifth ground for relief alleges that trial counsel was ineffective in failing to acquire a ballistics expert who would testify that the details of the homicide provided in Bethel's proffer statement were inaccurate, and that Bethel was therefore lying when he confessed to the murders.
 {¶ 46} Trial counsel argued, extensively, the issue of Bethel's proffered confession being inconsistent with the physical evidence. Bethel recorded the proffer years after the homicides. Thus, whether some details in Bethel's proffer did not squarely match up with evidence at the murder scene is not itself dispositive of the general reliability or *Page 15 
truthfulness of the statement. One remembers the most "important" part — that you murdered two people — without necessarily remembering all the details about how and when one fired each shot. Thus, counsel's failure to engage the opinion of a ballistics expert did not constitute ineffective assistance of counsel.
 {¶ 47} The sixth ground for relief parallels the fifth in many regards. Bethel alleges that trial counsel was ineffective because counsel did not engage a forensic pathologist to highlight the differences between Bethel's proffer and the evidence at the murder scene. This ground for relief has no merit for the same reasons as the fifth.
 {¶ 48} In the seventh ground for relief, Bethel alleges that trial counsel were ineffective by failing to adequately investigate and prepare to cross-examine his girlfriend, who testified that Bethel also confessed the murders to her. The former girlfriend apparently had documented mental-health problems, and was on medication to treat them. These were the subjects of her cross-examination.
 {¶ 49} The former girlfriend's mother testified that her daughter was delusional at times, even when taking her medication; however, short of a showing that the witness was not competent to testify, the mother's attitude toward her daughter could not have affected the outcome of the culpability phase of the trial. Bethel's proffer statement was already found to be admissible. The seventh ground for relief has no merit.
 {¶ 50} In the eighth ground for relief, Bethel alleges that trial counsel was ineffective by failing to adequately impeach a key state witness. The witness, Donald Langbein, who was Bethel's roommate, implicated Bethel in the murders as part of a plea negotiation on his own behalf. Langbein worked as a police informant for a period of time and, at one time, attempted to record Bethel's confession while the two were eating at a *Page 16 
Subway restaurant. Langbein did not succeed in capturing Bethel's confession on tape, nor did police succeed in finding the murder weapon using Langbein's assistance.
 {¶ 51} Langbein's testimony was less than complimentary to Bethel's defense. He painted a picture of Bethel as a person comfortable with committing armed robbery, and of planning homicide. The longer Langbein testified, the more damage to Bethel's defense, whether on direct or cross-examination. Given Bethel's proffered confession, Langbein's concurring testimony about the same confession was not outcome determinative. Therefore, ineffective assistance of counsel cannot be based on the vague supposition that trial counsel could or should have cross-examined Langbein more effectively. Moreover, even if it were possible to say, objectively, that trial counsel could have cross-examined a particular witness more effectively, this does not necessarily mean that counsel was ineffective under Strickland, at 684. As Strickland made clear, our role is not to gratuitously nitpick trial counsel's performance. Smith v. Mitchell (C.A.6, 2003), 348 F.3d 177,206. The first prong of the Strickland test asks whether counsel's actions fell below an objectively reasonable standard. NeitherStrickland, nor the Sixth Amendment guarantee a right to perfect representation. See id. (citing Strickland, at 684) ("After all, the constitutional right at issue here is ultimately the right to a fair trial, not to perfect representation"). The eighth ground for relief has no merit.
 {¶ 52} The tenth ground for relief alleges that trial counsel was ineffective for failing to present mitigating evidence at the penalty phase of the trial. The Supreme Court addressed this issue, and determined that trial counsel had, in fact, prepared a bona fide mitigation case. They planned to present several witnesses, including Bethel's mother, a teacher, social workers, and a guard at a juvenile facility. Bethel, at ¶ 146. Counsel was *Page 17 
also prepared to show that Bethel's parents abandoned him as a child and, as a result, he lacked discipline and guidance. Id. But it was Bethel who instructed his attorneys not to put on this evidence. Id. at ¶ 147. This prompted Bethel's attorneys to consult with a psychologist to determine whether Bethel was competent to make that decision. Jeffrey Smalldon, Ph.D., determined that he was. Id.
 {¶ 53} The Supreme Court of Ohio has held that a defendant may waive the right to present mitigating evidence during the penalty phase of a death case, so long as the defendant is mentally competent. State v.Ashworth, 85 Ohio St.3d 56, 1999-Ohio-204, 706 N.E.2d 1231, paragraph two of the syllabus. The court also held that a defendant is mentally competent to do so "if he has mental capacity to understand the choice between life and death and to make a knowing and intelligent decision not to pursue the presentation of evidence." Id.
 {¶ 54} As the Supreme Court noted in Bethel's direct appeal, the issue of the defendant's mental competency only arises when he decides to waive the presentation of all mitigating evidence. Bethel, at ¶ 148 (quoting Ashworth, supra; State v. Monroe, 105 Ohio St.3d 384,2005-Ohio-2282, 827 N.E.2d 285, ¶ 74). Here, Bethel did allow his attorneys to present some mitigating evidence — his own unsworn statement, and the testimony of his former supervisor at Subway restaurant — therefore, the Supreme Court determined that no inquiry into Bethel's mental competence was even necessary. Bethel, at ¶ 149.
 {¶ 55} Given the fact that Bethel's attorneys went one step further, and sought the advice of a clinical professional to determine whether Bethel's decision was made with a competent mind, it would be very difficult for us to now say that counsel was ineffective. *Page 18 
Bethel had the right to decide to risk execution at the cost of protecting his relationship with his mother. Counsel are not ineffective simply because they accede to their client's wishes. See, e.g.,Coleman v. Mitchell (C.A.6, 2001), 244 F.3d 533, 545-546 (citingJones v. Barnes [1983], 463 U.S. 745, 751-752, 103 S.Ct. 3308). Consequently, the tenth ground for relief has no merit.
 {¶ 56} The eleventh, twelfth, thirteenth, fourteenth, fifteenth, and sixteenth grounds for relief all mirror the tenth. Each of these additional grounds for relief alleges that it would have been beneficial to Bethel's case to present additional testimony at the mitigation hearing. Again, Bethel had the right to limit the evidence presented at the hearing, and chose to exercise that right. Counsel was not ineffective for failing to dissuade Bethel from his feelings about what should be presented and from acceding to his desires once counsels' efforts to dissuade him failed.
 {¶ 57} In the ninth ground for relief, Bethel claims that the state improperly misled the jury by implying that Bethel "conjured an alibi at the last minute before trial," when he had actually given that same alibi to the detectives who interviewed him on July 29, 1996. (Appellant's brief, at 25.)
 {¶ 58} Bethel also alleged prosecutorial misconduct before the Supreme Court of Ohio, albeit using different statements as the alleged prosecutorial misconduct. Bethel, at ¶ 194. The Supreme Court determined, however, that "Bethel failed to object to this statement at trial, thereby waiving any objection. The prosecutor's comment did not amount to plain error." Id. at ¶ 195.
 {¶ 59} The court did not have the specific allegations before it, however, the exhibits appended to the petition do not provide any new or independent support for an *Page 19 
allegation that Bethel told police years before that he was home with his mother and not at the scene of the homicides. Bethel alleges that exhibit No. 19 supports this claim; however, no exhibit No. 19 exists — the exhibits jump from number 18 to 20.
 {¶ 60} Without some factual basis to support it, we cannot find any new merit in the ninth ground for relief.
 {¶ 61} The seventeenth ground for relief alleges that execution by lethal injection is cruel and unusual punishment within the meaning of the Eighth and Fourteenth Amendments of the United States Constitution. Not only has the Supreme Court of Ohio systematically rejected this facial challenge to our state's current capital punishment method, but more recently, the United States Supreme Court decided this very issue, holding that lethal injection is not per se cruel and unusual. SeeBaze v. Rees (Apr. 16, 2008), No. 07-5439, 128 S.Ct. 1520 (recognizing the consensus that lethal injection is the human method of execution to date).
 Reasonable people of good faith disagree on the morality and efficacy of capital punishment, and for many who oppose it, no method of execution would ever be acceptable. * * *
 Kentucky has adopted a method of execution believed to be the most humane available, one it shares with 35 other States. Petitioners agree that, if administered as intended, that procedure will result in a painless death. The risks of maladministration they have suggested — such as improper mixing of chemicals and improper setting of IVs by trained and experienced personnel — cannot remotely be characterized as "objectively intolerable."
Id. at 23.
 {¶ 62} The lethal injection procedure used in Ohio is substantially similar to the one affirmed by the United States Supreme Court inBaze. Alan Johnson, Lethal Injection *Page 20 
Gets Legal Go-Ahead: Capital Cases in Ohio, 34 Other States Affected, Columbus Dispatch (Ohio) (Apr. 17, 2008). Therefore, we cannot find that Ohio's method of lethal injection violates the Eighth Amendment. The seventeenth ground for relief has no merit.
 {¶ 63} In the eighteenth ground for relief, petitioner challenges the constitutionality of Ohio's post-conviction relief statutory scheme, again pointing to the alleged deficiencies in not allowing discovery, and not providing for an evidentiary hearing as of right. As an intermediate appellate court, we are bound by the Ohio Constitution, and the Revised Code, as interpreted by the Supreme Court of Ohio. To date, the Supreme Court has not held Ohio's post-conviction relief process to be unconstitutional. Therefore, under the doctrine of stare decisis, we must also not find it to be so. Furthermore, legislative acts are presumed constitutional. Desenco, Inc. v. Akron, 84 Ohio St.3d 535, 538,1999-Ohio-368, 706 N.E.2d 323. Bethel has not cited to any binding authority supporting his argument that R.C. 2953.02 is unconstitutional.
 {¶ 64} In the nineteenth ground for relief, Bethel argues that the cumulative effect of the errors and deficiencies alleged in the foregoing grounds are sufficient to constitute an independent ground for relief, even if no individual ground for relief justifies reversal on its own. See State v. DeMarco (1987), 31 Ohio St.3d 191,509 N.E.2d 1256, paragraph two of the syllabus (recognizing the doctrine of cumulative error).
 {¶ 65} The Supreme Court also addressed this argument, and found no substance to it. Bethel, at ¶ 197 (quoting State v. Sapp,105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239, at ¶ 103). "[I]t is not enough simply to intone the phrase `cumulative error.'" Id. As before, Bethel offers this court no further evidence in support of his claim that he was denied a fair trial because of cumulative errors. We do not find that the accumulation *Page 21 
of the minor deficiencies, if any, demonstrate a sufficient ground to overturn the result, judgment, or sentence in Bethel's case. We, therefore, find no new merit in the nineteenth ground for relief.
 {¶ 66} Based on all of the above, the third assignment of error is overruled.
 {¶ 67} Having overruled all three assignments of error, we affirm the judgment the Franklin County Court of Common Pleas.
Judgment affirmed.
MCGRATH, PJ., and BROWN, J. concur.
[1] The Supreme Court's opinion states that Bethel made the proffer on August 30, 2000, but we conclude that this should have read August 30, 2001. *Page 1