[Cite as *State v. Conway*, 2019-Ohio-2260.]

# IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

State of Ohio,                                     :

    Plaintiff-Appellee,                       :

                             No. 17AP-504

v.                                                 :        (C.P.C. No. 02CR-3117)

James T. Conway, III,                              :        (REGULAR CALENDAR)

    Defendant-Appellant.                      :

---

## D E C I S I O N

### Rendered on June 6, 2019

---

**On brief**: *Ron O'Brien*, Prosecuting Attorney, *Sheryl L. Prichard*, and *Steven L. Taylor*, for appellee.

**On brief**: *Bieser, Greer & Landis, LLP, James P. Fleisher*; *Marc S. Triplett*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Defendant-appellant, James T. Conway, III, filed a third petition for post-conviction relief in the Franklin County Court of Common Pleas seeking relief from his conviction and sentence of death for the murder of Andrew Dotson. After the trial court dismissed the petition, Conway appealed. For the reasons set forth below, we affirm the judgment of the trial court. In addition, we render moot plaintiff-appellee, the State of Ohio's, pending motion for expedited consideration.

{¶ 2} On September 14, 2001, Conway shot and wounded Jesse James at an intersection on the west side of Columbus. Dotson was present at the shooting. Conway asked several of his friends to kill Dotson. Although they initially agreed and drove Dotson

to West Virginia to kill him there, they were unable to commit the act and returned to Columbus. Conway then killed Dotson himself with a pickaxe and left his body in a cornfield. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 1-9 ("*Conway I*").

{¶ 3}   A grand jury indicted Conway on one count of aggravated murder under R.C. 2903.01, one count of kidnapping under R.C. 2905.01, one count of possession of criminal tools under R.C. 2923.24, one count of abuse of a corpse under R.C. 2927.01, one count of obstructing justice under R.C. 2921.32, and one count of tampering with evidence under R.C. 2921.12. *Id.* at ¶ 20. The aggravated murder charge carried three death penalty specifications. The specifications alleged the murder was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense under R.C. 2929.04(A)(3); that the offense was committed during a kidnapping under R.C. 2929.04(A)(7); and that the victim was a witness to an offense who was purposely killed to prevent the victim from testifying in a criminal proceeding under R.C. 2929.04(A)(8). *Id.* at ¶ 21.

{¶ 4}   A jury found Conway guilty of all the charges as well as the death penalty specifications and, after a penalty hearing, recommended the death sentence. The trial court merged the kidnapping conviction into the aggravated murder conviction and sentenced Conway to death on October 8, 2003. He received an aggregate sentence of 12 years imprisonment for the other offenses. *Id.* at ¶ 29. After a direct appeal, the Supreme Court of Ohio affirmed the convictions and the death sentence on June 21, 2006. *Id.* at ¶ 157.

{¶ 5}   Conway has filed three petitions for post-conviction relief under R.C. 2953.21. He asserted 20 claims of constitutional violations in the first petition, which the trial court denied. On appeal, Conway asserted the trial court erred by denying his requests for discovery, the appointment of attorneys for the appeal, and funding to retain expert witnesses. He also asserted the trial court erred by applying res judicata to his claims and by denying him relief. We affirmed the trial court's denial of the petition on November 28, 2006. *State v. Conway*, 10th Dist. No. 05AP-550, 2006-Ohio-6219 ("*Conway II*").

{¶ 6}   After filing a petition for a writ of habeas corpus in federal district court, Conway was granted leave to conduct discovery on April 8, 2009. *Conway v. Houk*, S.D.Ohio No. 3:07-cv-345 (Apr. 8, 2009). With the evidence obtained from those discovery

proceedings, Conway filed a second petition for post-conviction relief on November 2, 2011. The trial court denied the petition. On appeal, Conway argued the trial court had erred when it dismissed his claims that the state had suppressed exculpatory evidence and that he had received ineffective assistance of counsel due to his original trial attorney's conflicts of interest. He also asserted the trial court erred by denying his motions for discovery and appointment of counsel, and he brought facial and as-applied challenges to R.C. 2953.23(A), the statute governing successive petitions for post-conviction relief. We gave Conway "the benefit of the doubt" that he was unavoidably prevented from obtaining discovery documents he relied on to argue that new facts allowed review of his successive petition under R.C. 2953.23(A)(1), but rejected his arguments on their merits and affirmed the trial court's dismissal of the petition. *State v. Conway*, 10th Dist. No. 12AP-412, 2013-Ohio-3741, ¶ 18 ("*Conway III*").

{¶ 7} Conway filed a third petition for post-conviction relief on March 19, 2013. He originally filed the petition pro se and attached nearly 1,600 pages of documents as exhibits. Conway unsuccessfully moved the trial court to appoint counsel to represent him. However, the federal court hearing his habeas corpus petition appointed counsel and, with their assistance, Conway filed an amended petition for post-conviction relief on January 4, 2016. He presented nine grounds for relief to the trial court that addressed three areas of alleged constitutional injury: (1) the constitutionality of Ohio's post-conviction relief statute, R.C. 2953.23(A), (2) ineffective assistance of trial counsel, and (3) ineffective assistance of his first post-conviction counsel.

{¶ 8} The trial court rejected Conway's constitutional challenge to the post-conviction relief statute and ruled his claims were barred by res judicata. However, the trial court did address the merits of Conway's arguments and concluded he was not entitled to relief because he had "failed to present sufficient evidence demonstrating that but for trial counsel's allegedly deficient performance the result of the trial proceedings would have been different." (June 13, 2017 Decision & Entry at 11.) The trial court also rejected Conway's claim concerning the alleged ineffective assistance of his initial post-conviction counsel on the grounds the Sixth Amendment right to counsel does not apply in post-conviction proceedings. Accordingly, the trial court denied Conway's petition and denied

as moot his pending motions requesting leave to conduct discovery and funding for an expert witness.

{¶ 9} Conway has appealed and asserts the following six assignments of error:

[I.] THE TRIAL COURT ERRED WHEN IT DID NOT DECLARE THE CLEAR AND CONVINCING BURDEN OF PROOF CONTAINED IN R.C. 2953.23(A)(1)(b) CONSTITUTIONALLY INFIRM ON ITS FACE AND AS APPLIED TO CONWAY.

[II.] THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT GRANTED THE STATE'S MOTION TO DISMISS THE FIRST GROUND FOR RELIEF AND DENIED CONWAY RELIEF.

[III.] THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED CONWAY'S MOTIONS FOR DISCOVERY.

[IV.] THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED CONWAY'S MOTION FOR FUNDING.

[V.] THE TRIAL COURT ERRED WHEN IT GRANTED THE STATE'S MOTION TO DISMISS THE SECOND TO EIGHTH GROUNDS FOR * * * RELIEF AND DENIED CONWAY FACTUAL DEVELOPMENT AND RELIEF.

[VI.] THE TRIAL COURT ERRED WHEN IT GRANTED THE STATE'S MOTION TO DISMISS THE NINTH GROUND FOR RELIEF AND DENIED CONWAY FACTUAL DEVELOPMENT AND RELIEF.

{¶ 10} Because "a trial court's decision to dismiss a petition for post-conviction relief without an evidentiary hearing involves a mixed question of law and fact to determine whether the petition states substantive grounds for relief," we have previously held that a manifest weight of the evidence standard applies to review of the trial court's determination of factual issues and a de novo standard applies to legal issues. *State v. Tucker*, 10th Dist. No. 12AP-158, 2012-Ohio-3477, ¶ 9, citing *State v. Stewart*, 10th Dist. No. 09AP-817, 2009-Ohio-6423, ¶ 4.

{¶ 11} The standard of review in this case involves a purely legal issue: whether Conway's petition satisfied the jurisdictional requirement for review of a successive petition under R.C. 2953.23(A). *See State v. Apanovitch*, ___ Ohio St.3d ___, 2018-Ohio-4744, ¶ 24

(rejecting the argument that an abuse of discretion standard applies to the review of a trial court's determination that a petitioner had satisfied R.C. 2953.23(A)). Thus, a de novo standard applies to our review of the trial court's dismissal of Conway's successive petition for post-conviction relief. *Id.*, quoting *State v. Kane*, 10th Dist. No. 16AP-781, 2017-Ohio-7838, ¶ 9 (" 'the question whether a court of common pleas possesses subject-matter jurisdiction to entertain an untimely petition for postconviction relief is a question of law, which appellate courts review de novo' ").

{¶ 12} The circumstances that allow a petitioner to seek post-conviction relief are set forth under R.C. 2953.21(A)(1)(a). A person convicted of a criminal offense "who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States" may file a petition for post-conviction relief "in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief." *Id.* The process only allows for "a collateral civil attack on the judgment" and is not a means to relitigate the substantive issues raised in a direct appeal. *State v. Steffen*, 70 Ohio St.3d 399, 410 (1994). "Postconviction review is a narrow remedy, since *res judicata* bars any claim that was or could have been raised at trial or on direct appeal." *Id.*

{¶ 13} A petition for post-conviction relief "shall be filed no later than three hundred sixty-five days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction" challenged by the petition. R.C. 2953.21(A)(2). Because "a court *may not entertain* a petition filed after the expiration of" that time period, "or a second petition or successive petitions for similar relief" by the petitioner, the restriction is jurisdictional. (Emphasis sic.) R.C. 2953.23(A)(1); *Apanovitch* at ¶ 36.

{¶ 14} The "limited gateway" of R.C. 2953.23(A)(1) provides "specific, limited circumstances" under which a court may hear a successive petition. *Apanovitch* at ¶ 22. Conway's petition required a showing of both of the following:

> (a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier

petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

R.C. 2953.23(A)(1).

{¶ 15} For the following reasons, we hold that Conway failed to clear this jurisdictional bar.

{¶ 16} Conway's fifth assignment of error is the only one to squarely address facts purportedly outside the record that support the claims for relief in his petition. Because Conway must show that he was "unavoidably prevented from discover[ing]" such facts as well as "clear and convincing evidence" of outcome determinative constitutional error to invoke jurisdiction under R.C. 2953.23(A)(1), we turn first to the fifth assignment of error.

{¶ 17} The fifth assignment of error states the trial court erred when it dismissed the fifth through eighth grounds for relief in the petition, all of which argued Conway received ineffective assistance of counsel during the pre-trial and trial phases of the proceedings, in violation of the Sixth and Fourteenth Amendments.

{¶ 18} Under the two-pronged test for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a defendant must first show counsel's performance was deficient by demonstrating there were "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Second, the defendant must show that the deficient performance resulted in prejudice, which must demonstrate that the defendant failed to receive a fair trial with a reliable result. *Id.*

{¶ 19} Conway makes a number of arguments to support his claim of ineffective assistance of counsel. First, he asserts his trial counsel was ineffective for failing to argue during a suppression hearing that his statements to Ronald Trent, an informant who

testified on behalf of the state, were not voluntary. Conway cites to transcripts of a number of statements that Trent made to him, including Trent's assertions that he was a hit man, a threat that Trent would "sock" Conway for not discussing Dotson's death, threats Trent made concerning other witnesses, and Conway's own statements to Trent that he did not wish to see him or discuss Dotson's death. (Appellant's Brief at 41-42.) According to Conway, Trent's statements "overcame" his will and rendered any inculpatory response to them involuntary and inadmissible. (Appellant's Brief at 43.) The trial court rejected this argument because it found that even if Trent's testimony had been excluded, there had been other overwhelming evidence of Conway's guilt at trial.

{¶ 20} Apart from the trial court's conclusion (with which we agree), Conway has not demonstrated how he "was unavoidably prevented from discovery of the facts" supporting this argument, as required by R.C. 2953.23(A)(1)(a). His assertion that his statements to Trent were rendered involuntary relies on interactions between the two of them. According to an affidavit that Conway submitted with his petition, he was not able to complete his review of the transcripts of these recordings of their interactions until June 2012. However, Conway was aware of everything Trent said to him before the trial and could have disclosed any of those statements to his attorney, if he did not in fact do so. Thus, although recordings or transcripts of their interactions were not available until later, the actual facts supporting his argument are his interactions with Trent, which were within his own knowledge even before trial. Thus, he was not unavoidably prevented from discovering them, and cannot rely on these facts to overcome the jurisdictional bar under R.C. 2953.23(A)(1)(a). For the same reason, the trial court correctly concluded that this argument is also subject to res judicata, as the alleged ineffectiveness of his trial counsel concerning the failure to argue that the statements were involuntary could have been raised during the direct appeal of his conviction.

{¶ 21} Conway also argues that his trial counsel was ineffective because she failed to effectively cross-examine Trent when he testified that Conway confessed on two occasions to Dotson's murder. He points to a number of inconsistencies between Trent's testimony and the statements made on the transcripts of recorded conversations between he and Trent as evidence that his trial counsel was ineffective for failing to impeach Trent's credibility.

{¶ 22} However, as with his previous argument, Conway himself engaged in the conversations with Trent. Thus, the argument is based on facts that were within his knowledge before the trial, not facts that he was unavoidably prevented from discovering. Furthermore, Conway repeatedly states in his briefing that his trial counsel had evidence at the time of trial that she could have used to impeach Trent. (Appellant's Brief at 45.) ("Trial counsel had available to her documentation, most of which was generated by Trent, which called into question Trent's credibility."); *(Appellant's Brief at 49.) (Trial "[c]ounsel should have used the transcript to call into question Trent's credibility as to the supposed confession when the visit at the jail occurred."); (Appellant's Brief at 50.) ("Trial counsel had available to them numerous recordings made by Trent that impeached that portion of his testimony."). Based on these admissions, we conclude this argument is not based on facts that Conway was unavoidably prevented from discovering, as R.C. 2953.23(A)(1)(a) requires to confer jurisdiction to hear a successive petition, and that res judicata applies as well.

{¶ 23} Conway also asserts his trial counsel ineffectively cross-examined Roberta Hannah because statements she made during an interview with a homicide detective would have been grounds for pursuing a theory that Dotson shot Jesse James, thereby undermining her assertion that she only "heard" that to be the case. (Appellant's Brief at 54.) According to Conway, Hannah stated to the detective that Dotson himself had told her he shot at James. However, the transcript of the interview with the detective does not reveal any statement by Hannah that would have substantively undermined her testimony. She stated to the detective that both Dotson and Conway had shot at James. It is not clear from Conway's briefing or the argument in his petition when the transcript of Hannah's interview with the detective became available. Even assuming it was not available to Conway's attorney at trial, and that he was therefore unavoidably prevented from discovering it under R.C. 2953.23(A)(1)(a), Hannah's statements only further implicate Conway in James's shooting. Cross-examining her on her statements to the detective could have resulted in testimony that would have supported the state's assertion that Conway's motive for murdering Dotson was because he witnessed Conway shoot James. Thus, we cannot agree Conway's trial counsel was ineffective for failing to pursue this line of questioning.

{¶ 24} Conway also argues his trial counsel was ineffective when cross-examining Trent on his assertions that Conway had paid him money and offered him drugs to kill Michael Arthurs. Citing a transcript of a taped interaction between Conway's associate Jamie Horton and Trent, during which Trent wore a wire, Conway argues that Trent's statements to Horton were inconsistent with Trent's testimony. The first alleged inconsistency is that although Horton asked Trent to pay for drugs, Trent testified that Conway had told Horton to give Trent whatever drugs he wanted.

{¶ 25} One of the transcripts Conway cites involves a discussion of a drug deal that Trent and Horton "can both make some money on," with no other specifics. (Mar. 3, 2013 Pet. Ex. 18 at 3.) Another transcript records a discussion of a hypothetical deal involving Trent's father and the sale of a large amount of cocaine. (Mar. 19, 2013 Pet. Ex. 19 at 2.) Conway also cites transcripts where Trent complains to Horton about not having any money and argues that this is inconsistent with Trent's testimony that Conway had paid him $5,000 to murder Arthurs.

{¶ 26} We agree with the trial court's description of these inconsistencies as "minor in light of the other evidence presented at trial which corroborated Trent's trial testimony." (June 13, 2017 Decision at 12.) This evidence included a $5,000 deposit by Conway into Trent's prison account and evidence that Trent was provided with drugs and guns. Given the overwhelming evidence of the scheme that the jury considered, the purported inconsistencies that Conway points to do not amount to clear and convincing evidence under R.C. 2953.23(A)(1) that would have cast doubt on the conspiracy to murder Arthurs, much less alter the ultimate result of his trial.

{¶ 27} Conway points to a number of other issues he believes his trial counsel was ineffective for not pursuing during cross-examination. He argues his trial counsel ineffectively cross-examined Arthurs on his testimony that Conway told him and Shawn Nightingale while in a motel bathroom that Dotson needed to be killed, as well as Arthurs' statement that the motel room was likely rented under a fictitious name. Conway points to Arthurs' initial statement that did not mention being in a motel bathroom and his testimony at Horton's trial that the motel room was rented in his (Arthurs') name as inconsistencies that should have been brought up on cross-examination.

{¶ 28} Conway cites to the summary of Arthurs' statement, prepared by a homicide detective, which states that "Conway had instructed [Arthurs] and Shawn Nightingale to kill Andrew. Conway had shot someone (Jesse James) and was afraid that Andrew would tell the police. The 'group' had rented a room at the Hampton Inn in Chillicothe." (Mar. 19, 2013 Pet. Ex. 50.) The statement omits a mention of the bathroom, but that is not impeachable inconsistency. Furthermore, Arthurs mentioned the bathroom in his subsequent interview with the detectives ten days later: "me and Shawn went into the bathroom * * * and Jimmy came in and asked me and Shawn if we would kill Andrew because he seen Jimmy shoot someone before that." (Mar. 19, 2013 Pet. Ex. 52 at 211.) Arthurs' statements to police were not inconsistent with his trial testimony concerning the meeting in the bathroom where Conway told his associates to murder Dotson.

{¶ 29} Nor was Arthurs' testimony at Horton's trial inconsistent with his testimony at Conway's trial. At Horton's trial, Arthurs testified that he, Conway, Horton, Dotson, and Nightingale had been at a birthday party "before we went back to my hotel room." (Mar. 19, 2013 Pet. Ex. 52 at 209.) He was not asked whether the room was rented in his name or not, and would likely have referred to any room he was staying in as his room.

{¶ 30} Conway also argues that Arthurs should have been cross-examined with Nightingale's denial that Conway had instructed him to kill Dotson and Nightingale's assertion that it was his idea to take Dotson to West Virginia after Arthurs testified there was no plan to go there before their arrival in that state. The denial that Conway cites is from an interview that detectives conducted with Nightingale in May 2002. By the time of his proffer in August 2003, shortly before Conway's trial, Nightingale stated that Conway had instructed him to kill Dotson. The proffer was provided to Conway's trial attorneys in discovery. Even if Nightingale's out-of-court statement denying that Conway had asked him to kill Dotson were admissible as a hearsay exception under Evid.R. 801(D)(2)(e) as a statement by a co-conspirator, the state would have countered with Nightingale's later proffer. Thus, it is unlikely that the statement would have any impeachable effect on Arthurs' testimony.

{¶ 31} Conway also points to the testimony of Trent and Arthurs, who both stated Nightingale and Arthurs brought Dotson back from West Virginia because they had been unable to murder him, and a statement by Nightingale that he did not think Arthur had

changed his mind about killing Dotson before driving back. In addition, Conway argues there were discrepancies between Trent and Arthurs' descriptions of where Dotson's body was left and their reasons for taking Dotson to the cornfield where Conway murdered him. Conway points to Nightingale's assertion that he chose the cornfield because it was where his brother lived, but does not cite any portion of Arthurs' testimony that this statement contradicted. The trial court characterized these purported inconsistencies as "trivial." (June 13, 2017 Decision & Entry at 13.) We agree. Revealing these purported inconsistencies to the jury would not have clearly and convincingly resulted in any other outcome at trial than the one that occurred. Accordingly, nothing in the record that Conway cites to satisfies the jurisdictional requirements of R.C. 2953.23(A)(1). The trial court did not err in reaching this conclusion as well. The fifth assignment of error is overruled.

{¶ 32} Conway's first assignment of error argues the burden of proof that applies to post-conviction petitions under R.C. 2953.23(A) is unconstitutional on its face and as applied to him. Conway concedes we addressed this argument in *Conway III*, our decision affirming the denial of his previous petition for post-conviction relief, and that he raises it here "to preserve it for review by the Supreme Court of Ohio." (Appellant's Brief at 4, fn. 2.) Our previous opinion applied the reasoning of *State v. McGuire*, 12th Dist. No. CA2000-10-011 (Apr. 23, 2001), to reject Conway's facial and as-applied challenges to R.C. 2953.23(A). *Conway III* at ¶ 59-65. We adopt our holding in *Conway III* and overrule the first assignment of error.

{¶ 33} In the second assignment of error, Conway argues the trial court erred when it dismissed his first ground for relief in which he argued that the reliance on the principle of res judicata and a petitioner's inability to conduct discovery until convincing a trial court that a hearing is warranted renders Ohio's post-conviction relief process an inadequate remedy for the violation of a petitioner's constitutional rights.

{¶ 34} Again, we addressed this issue in a previous opinion. Conway raised the argument in his initial petition for post-conviction relief. We found it to be without merit, noting we had previously held that " '[t]his court and other Ohio appellate courts have rejected [claims] that Ohio's post-conviction statute does not afford an adequate corrective process.' " *Conway II* at ¶ 27, quoting *State v. Hessler*, 10th Dist. No. 01AP-1011, 2002-Ohio-3321, ¶ 73. In *Hessler*, we rejected the argument that "the postconviction process

violates a petitioner's right to due process and equal protection of law guaranteed under the United States Constitution because it does not afford the petitioner the power to conduct or perform discovery to determine whether an evidentiary hearing is warranted." *Id.* Furthermore, the propriety of resolving a post-conviction petitioner's arguments by applying the principle of res judicata is well-settled. *E.g., State v. Szefcyk*, 77 Ohio St.3d 93, 95 (1996) ("*Res judicata* is applicable in all postconviction relief proceedings."). Accordingly, the second assignment of error is overruled.

{¶ 35} Conway's third assignment of error asserts the trial court erred by denying two motions for leave to conduct discovery that he filed. He argues the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution entitle him to conduct discovery in support of the allegations raised by his post-conviction petition.

{¶ 36} We addressed this issue in our decision affirming the denial of Conway's previous post-conviction petition. *Conway III* at ¶ 66-69. " 'A post-conviction relief proceeding is a collateral civil attack on a judgment and is not imbued with the same federal constitutional protections as are all of the criminal proceedings which precede it.' " *Id.* at ¶ 67, quoting *State v. Lott*, 8th Dist. No. 79790, 2002-Ohio-2752, ¶ 53. The United States Supreme Court and the Supreme Court of Ohio have generally rejected arguments that constitutional protections such as due process apply in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 557-59 (1987) (declining to recognize the right to appointed counsel for a first appeal as of right under the Fourteenth Amendment applies in post-conviction proceedings); *Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, ¶ 21 (rejecting the argument that the Due Process Clause under the Fourteenth Amendment applies in a post-conviction proceeding under App.R. 26(B)). The Supreme Court of Ohio has specifically rejected the argument that a petitioner in a post-conviction proceeding is entitled to engage in discovery on constitutional grounds. *State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office*, 87 Ohio St.3d 158 (1999) (Per Curiam). Furthermore, we have expressly held that because we are bound by the holding in *Love,* this court is "not the proper authority to consider the merits" of the argument that there is a constitutional right to discovery in post-conviction proceedings. *State v. Bethel*, 10th Dist. No. 07AP-810, 2008-Ohio-2697, ¶ 25. "If there is indeed a federal right to discovery in post-conviction

proceedings, that right must either be recognized by the Supreme Court of Ohio, or forced upon them by a federal court." *Id.* Accordingly, we decline to recognize any constitutional grounds that would entitle Conway to engage in discovery in this post-conviction proceeding.

{¶ 37} Conway also argues there is a statutory basis for his discovery request based on amendments to R.C. 2953.21 and Crim.R. 42 that allow discovery in post-conviction proceedings. In support of this argument, he cites *State v. Ketterer*, 12th Dist. No. CA2016-08-166, 2017-Ohio-4117, ¶ 47, in which the Twelfth District Court of Appeals reversed a trial court's denial of a petition for post-conviction relief and remanded the case to the trial court "to determine whether newly-amended R.C. 2953.21 applies to appellant's [post-conviction relief] petitions, and if so, whether appellant has shown good cause under the new statute and is entitled to discovery."

{¶ 38} In relevant part, the statute provides as follows:

> At any time in conjunction with the filing of a petition for postconviction relief under division (A) of this section by a person who has been sentenced to death, or with the litigation of a petition so filed, the court, for good cause shown, may authorize the petitioner in seeking the postconviction relief and the prosecuting attorney of the county served by the court in defending the proceeding, to take depositions and to issue subpoenas and subpoenas duces tecum in accordance with divisions (A)(1)(d), (A)(1)(e), and (C) of this section, and to any other form of discovery as in a civil action that the court in its discretion permits.

R.C. 2953.21(A)(1)(d).

{¶ 39} By the plain language of the statute, its grant of discovery does not apply to Conway's petition. The statute only allows discovery in connection with "a petition for postconviction relief under division (A)" of R.C. 2953.21. R.C. 2953.21(A)(1)(d). A petition filed under R.C. 2953.21(A) "shall be filed no later than three hundred sixty-five days after the date on which the trial transcript is filed" in the reviewing court. R.C. 2953.21(A)(2). Thus, the discovery procedure set forth under R.C. 2953.21(A)(1) only applies to an initial, timely petition for post-conviction relief, and not to a successive petition filed under R.C. 2953.23. Because the petition in *Ketterer* was an initial petition brought under R.C. 2953.21, the case does not apply to Conway's petition. *State v. Kinley*, 2d Dist. No. 2016-

CA-11, 2018-Ohio-2423, ¶ 30 (distinguishing *Ketterer* because that case "was governed by R.C. 2953.21, not R.C. 2953.23" and a successive petition denied under R.C. 2953.23 "is not analogous" to *Ketterer*).

{¶ 40} Furthermore, the statute expressly states the discovery procedures do "not apply to any person who has been convicted of a criminal offense and sentenced to death and who has unsuccessfully raised the same claims in a petition for postconviction relief." R.C. 2953.21(A)(1)(j). Thus, a petitioner like Conway who has filed multiple unsuccessful petitions for post-conviction relief is not entitled to partake in discovery under R.C. 2953.21(A)(1). Such a petitioner must overcome the jurisdictional bar for untimely and successive petitions in R.C. 2953.23. That standard requires a successive petitioner to show both that he "was unavoidably prevented from discovery of the facts" supporting the claim for relief and, "by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted." R.C. 2953.23(A)(1)(a) and (b). The General Assembly did not amend R.C. 2953.23, the statute governing successive petitions, with a "good cause" basis for conducting discovery as it did for initial petitions under R.C. 2953.21. Instead, the legislature left the high standard for invoking jurisdiction over successive petitions unaltered while imposing a prohibition of discovery for a petitioner filing multiple unsuccessful petitions. *See* R.C. 2953.21(A)(1)(j). Thus, Conway's arguments that the trial court should have considered his discovery request under the "good cause" standard are without merit. The third assignment of error is overruled.

{¶ 41} Conway's fourth assignment of error asserts the trial court abused its discretion when it denied his motion for the funding of expert witnesses to support his claim of ineffective assistance of counsel. He argues there are constitutional grounds for granting his request, and that it was error for the trial court to deny this request after deciding the merits of his petition because he needed the funding assistance to develop a record in support of his claims.

{¶ 42} We have previously rejected the argument that a post-conviction petitioner has a constitutional right to have the trial court appoint an expert. *State v. Monroe*, 10th Dist. No. 04AP-658, 2005-Ohio-5242, ¶ 15. In *Monroe*, we reasoned as follows:

> With respect to the specific claim of error in the denial of an expert, it is clear that a defendant who has received the death

> sentence has a statutory right to appointed counsel to pursue a post-conviction motion. R.C. 2953.21(I). The statute, however, does not provide for appointment of experts or investigators. The Supreme Court of Ohio has specifically held that there is no constitutional right to appointment of counsel in such circumstances and the right is granted strictly by statute. *State v. Crowder* (1991), 60 Ohio St.3d 151, 152, 573 N.E.2d 652. There is no authority holding that a corresponding constitutional right would exist to provide appointment of an expert or investigator predicated upon the specific statutory entitlement to counsel in a proceeding in which a constitutional right to counsel would not attach.

*Id.*

{¶ 43} In addition, we rejected this argument when Conway presented it in his initial petition for post-conviction relief. *Conway II* at ¶ 15. For these reasons, the fourth assignment of error is overruled.

{¶ 44} Conway's sixth assignment of error asserts the trial court erred when it granted the state's motion to dismiss the ninth ground for relief in his petition, which raised the claim that he received ineffective assistance of counsel during the litigation of his first petition for post-conviction relief. Conway argues that the Sixth and Fourteenth Amendments to the United States Constitution guarantee a right to effective assistance of post-conviction counsel.

{¶ 45} For several reasons, this claim is without merit. First, the United States Supreme Court has "never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions," only that "the right to appointed counsel extends to the first appeal of right, and no further." *Finley* at 555. *See also Davila v. Davis*, ____ U.S. ____, 137 S.Ct. 2058, 2062 (2017) ("a prisoner does not have a constitutional right to counsel in state postconviction proceedings").

{¶ 46} Second, there is no statutory right to effective assistance of counsel in post-conviction proceedings. Ohio's statute governing initial post-conviction petitions does allow the appointment of counsel in death penalty cases. R.C. 2953.21(J)(1). However, the statute also expressly states that "[t]he ineffectiveness or incompetence of counsel during proceedings under this section does not constitute grounds for relief in a proceeding under this section, in an appeal of any action under this section, or in an application to reopen a

direct appeal." R.C. 2953.21(J)(2). Thus, there is an explicit prohibition on any claim of relief predicated on a claim of ineffective assistance of post-conviction counsel.

{¶ 47} Third, Conway identifies no specific error committed by his previous post-conviction counsel. He merely argues that if this court were to find that any of the grounds of relief he has raised in the instant petition could have been raised in an earlier petition, such a determination would demonstrate that his previous post-conviction counsel was ineffective. Under the holding of *Finley* and the language of R.C. 2953.21(J)(2), the hypothetical Conway presents could not constitute a cognizable claim of ineffective assistance of counsel. Accordingly, the sixth assignment of error is overruled.

{¶ 48} Conway has not demonstrated he was entitled to have the trial court review his successive petition for post-conviction relief because he did not satisfy both prongs of R.C. 2953.23(A)(1), as required for the trial court to have jurisdiction over his claims. Accordingly, Conway's six assignments of error he raises in his appeal of the trial court's dismissal of his petition are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed. The state's motion for expedited consideration is rendered moot.

*Judgment affirmed.*

KLATT, P.J., and BEATTY BLUNT, J., concur.

———————————